# In the United States Court of Federal Claims

**No. 25-195C**
**Filed: September 30, 2026**

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * | * |
| **SENECA GLOBAL SERVICES, LLC,** | * |
| **Plaintiff,** | * |
| **v.** | * |
| **UNITED STATES,** | * |
| **Defendant.** | * |
| * * * * * * * * * * * * * * * * * * * * | * |

**David S. Gallacher**, Kutak Rock LLP, Washington, DC; **Marcus P. Zelzer**, Kutak Rock LLP, Minneapolis, MN; and **Steven M. Sorett**, Kutak Rock LLP, Washington DC, for plaintiff.

**Borislav Kushnir**, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington DC, for defendant. With him were **Martin F. Hockey**, Deputy Director, Commercial Litigation Branch; **Patricia M. McCarthy**, Director, Commercial Litigation Branch; and **Brett A. Shumate**, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, DC; Of counsel **Maj. Joshua Fix**, Trial Attorney, United States Army Legal Services Agency.

## O P I N I O N

**HORN, J.**

In the above captioned case, plaintiff, Seneca Global Services, LLC (Seneca), challenges the July 29, 2024 contracting officer's final decision (Contracting Officer's Final Decision), which denied plaintiff's Certified Claim under Contract No. W56JSR-20-C-0003, pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109 (2024), and the Tucker Act, 28 U.S.C. § 1491 (2024). In its five-count complaint, Seneca alleges that defendant United States, acting by and through the United States Department of the Army, Army Contracting Command, Aberdeen Proving Ground, breached Contract No. W56JSR-20-C-0003, breached the covenant of good faith and fair dealing, and breached an express warranty, by deciding not to exercise Option Year 3 and Option Year 4 available under Contract No. W56JSR-20-C-0003. Plaintiff also alleges in its complaint that the defendant should be "equitably estopped from denying liability for its actions." Plaintiff further alleges, "[i]n the alternative," that "the non-renewal of the Contract in

Option Years 3 and 4 should be considered a termination for convenience by the Army." (alteration added).[1] Plaintiff seeks damages in the amount of $8,490,000.00, plus administrative costs and interest. Pursuant to Rule 12(b)(6) (2024) of the United States Court of Federal Claims (RCFC), defendant moved to dismiss plaintiff's complaint in full for failure to state a claim upon which relief can be granted. Defendant's motion to dismiss has been briefed and the court has held oral argument.

## FINDINGS OF FACT

According to plaintiff's complaint, "Seneca is a tribally owned, certified 8(a) small, disadvantaged business" and "an Information Technology Value Added Reseller selling software and services to the U.S. Army," including the Oracle National Security Group's software platform. (the Oracle Software). Plaintiff alleges in its complaint that, as of the date of plaintiff's complaint, the Army had been using the Oracle Software for over seventeen years to support the Army's Distributed Common Ground System (DCGS-A) program.[2] In early 2020, Army representatives began communicating with industry, including Oracle and Red River Technology, LLC (Red River), "an authorized Oracle reseller," regarding the acquisition of new Oracle Software licenses and related software maintenance support services for the DCGS-A program under a payment plan with third-party financing. Under the new proposed third-party financing framework, "the Army would consolidate Support costs that had been compounding since 2006 and acquire usage of an unlimited license in the [Oracle] Software." (alteration added).

Thereafter, the Army Contracting Command, Aberdeen Proving Ground issued Solicitation No. W56JSR-20-R-0011 for "Oracle New Licenses and Software Support."

---

[1] The court notes that the parties' briefs, and documents in the record before the court, sometimes use the term "non-renewal" to refer to defendant's decision not to exercise Option Year 3 and Option Year 4 that were available under Contract No. W56JSR-20-C-0003 between plaintiff and defendant.

[2] The United States Court of Appeals for the Federal Circuit has described the purpose of the Distributed Common Ground System as follows:

> The Distributed Common Ground System ("DCGS") is made up of Army, Air Force, Navy, and Marine Corps ground processing systems that can share information across the Joint Force. The over-arching purpose of the Army's Distributed Common Ground System ("DCGS-A") is to combine all of the Army's intelligence software/hardware capabilities into one program with the ability to access and be accessed by Army intelligence and command components, as well as other military and intelligence systems. DCGS-A includes many software products—commercial, government, and open source—as well as software integration that allows all the different products and components to communicate and operate seamlessly.

Palantir USG, Inc. v. United States, 904 F.3d 980, 984-85 (Fed. Cir. 2018).

(the Solicitation). On May 11, 2020, Seneca submitted a proposal, labeled "Price Quote – REV 1," in response to the Solicitation, offering Commercial-Off-The-Shelf Oracle Software licenses and support. (the Price Quote). Attached to Seneca's Price Quote were two exhibits: the Exhibit A "End User Ordering Document," and the Exhibit A-1 "Oracle Federal Master Agreement General Terms."[3] Particularly relevant to the dispute currently before the court, Seneca's Price Quote included a section titled "**PAYMENT ADDENDUM (SOFTWARE)**,"[4] (capitalization and emphasis in original), which stated, in relevant part, the following terms and conditions:

> **<u>Transaction Background</u>**
>
> The Government elects these terms (the "Addendum") to pay the amounts due under the order (the "system price") on an installment basis as set forth herein (subject to the availability of annual appropriations) to acquire the system specified in the order. Contractor accepts the payment amounts in reliance on the Government's undertakings pursuant to this Addendum including the Government's warrant that the use of the system[5] is essential to its proper operation for the entire term of this Addendum.
>
> . . .
>
> **<u>Non-appropriation, Renewal, Termination</u>**
>
> This Addendum is subject to the availability of annual appropriations. Substantiation to support a termination for non-appropriation shall be

---

[3] In their submissions to the court in the above captioned case, plaintiff and defendant appear sometimes to use the words and phrases "Proposal," "Payment Addendum," "Addendum," "Payment Terms," and "Terms" interchangeably to collectively refer to Seneca's Price Quote, the Exhibit A "End User Ordering Document," and the Exhibit A-1 "Oracle Federal Master Agreement General Terms." Given that the dispute currently before the court centers on whether specific documents, terms, and conditions included in Seneca's Price Quote were incorporated into Contract No. W56JSR-20-C-0003 by reference, the court tries to refer to Seneca's Price Quote, the Exhibit A "End User Ordering Document," and the Exhibit A-1 "Oracle Federal Master Agreement General Terms" individually when discussing the contents of each particular document, unless quoting directly from the parties' submissions to the court.

[4] The court will refer to the terms and conditions included in the section of Seneca's Price Quote titled "**PAYMENT ADDENDUM (SOFTWARE)**," (capitalization and emphasis in original), as "the Payment Addendum section of Seneca's Price Quote."

[5] The Payment Addendum section of Seneca's Price Quote states that "[t]he software and services ordered from contractor under the order, together with software upgrades, and updates received from support related to the system shall comprise the 'system.'" (alteration added).

provided to the Contractor upon request. The Government has the option to renew the Order for subsequent fiscal years beyond the initial fiscal year. Any renewal(s) shall be on the same terms and conditions of the initial Order. The Government agrees to use its best efforts to obtain funds for each renewal option. The Government may elect not to renew the order at the end of any base or option period only if adequate funds have not been made available to the Government in an amount sufficient to continue to make the payment amounts. If the Government determines that funds are available on another contract vehicle to cover the same or similar licenses as are covered by this order and choose [sic] to obtain or retain the licenses under that contract vehicle, the Government shall be deemed to have had available funds for renewals under this order and shall only be relieved of its responsibilities under this order with the written consent of contractor.

The Government's contracting officer may terminate the order for convenience pursuant to FAR 52.212-4(l). In the event of a stop work order and resulting termination for convenience, the contractor will be entitled to payment of all amounts due to the actual termination for convenience date, after which it will recover the unamortized payments, discounted at equivalent U.S. Treasury (H.15) T-bill rates as of the date of the initial delivery order, as a termination for convenience payment. If the stop work order does not lead to a termination for convenience, all payments shall be due as if there had been no stop work order.

The rights to use the system granted hereunder are priced and provided as a single asset, and therefore, the right of the Government to terminate or non-renew applies to the entire order and does not allow partial terminations or renewals. If the Government elects not to exercise its option to renew or terminates the order for convenience or non-appropriation, but expends funds to pay for products, software, and/or services that perform the functions which the system was procured to perform, then the Government will be deemed to have had funds available.

The Government will promptly notify the contractor of any termination or non-renewal. Upon such notification, the order will terminate at the end of the last fiscal year for which funds were appropriated and the Government shall provide contractor and/or its assignee written certification that it is no longer using the software.

. . .

**Miscellaneous**

These payment terms shall be deemed incorporated into the schedule of supplies/services for purposes of FAR 52.212-4, paragraph (s), item (1). All other documents shall follow the precedence set forth in FAR 52.212-4,

> paragraph (s). This Addendum supersedes any inconsistent terms in the Order. This precedence clause supersedes any other reference to the order of precedence. The rights and obligations under this Addendum are not affected by existing or future contracts for the purchase or lease of Contractor's or Oracle's products.
>
> . . .
>
> **Terms & Conditions and Assumptions**
>
> 1. The U.S. Army agrees to fully incorporate Exhibit-A (EUOD) [End User Ordering Document] & Exhibit-A-1 (OMA) [Oracle Master Agreement] into its contract/award to SGS [Seneca Global Services].

(capitalization and emphasis in original; alterations, footnote, and omissions added).

Plaintiff alleges in its complaint that "[t]he Payment Terms included information pertaining to the intention of Seneca and the Army, and Seneca conditioned its offer upon inclusion of these three documents [referring to Seneca's Price Quote, the Exhibit A "End User Ordering Agreement," and the Exhibit A-1 "Oracle Federal Master Agreement General Terms"] in the resulting Contract." (alterations added). Moreover, plaintiff alleges in its complaint that "[i]n email correspondence submitting the Proposal on May 11, 2020, Seneca explicitly specified in writing that the Proposal incorporated a 'Payment Addendum' reflecting supplemental terms and conditions in support of the payment plan, a payment schedule, and two Oracle Exhibits." (alteration added). According to plaintiff's complaint, on May 28, 2020, after Seneca submitted the Price Quote to the Army, Mr. Richard Newberg, the Army's Supervisory Contracting Officer,[6] sent Seneca a draft Contract No. W56JSR-20-C-0003 on Standard Form (SF) 1449, which was titled "SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEM," (capitalization in original), and "invited comments on the draft contract." Seneca responded as follows:

> Please incorporate this sentence **in BOX 20 of the SF 1449**[7] **"Seneca Global Services, LLC proposal dated May 11, 2020 – REV 1, offered in**

[6] Based on the record before the court, it appears that multiple individuals served as the contracting officer for Contract No. W56JSR-20-C-0003 over the course of Seneca's contract negotiation and performance. As relevant to the dispute currently before the court, Contracting Officer Newberg was the Army's Supervisory Contracting Officer who negotiated and signed Contract No. W56JSR-20-C-0003 on behalf of the Army on May 31, 2020. Contracting Officer Lynette Perez was the Army Contracting Officer who informed Seneca that Option Year 3 would not be exercised, and who also ultimately issued the Contracting Officer's Final Decision on July 29, 2024, which Seneca challenges in the above captioned case.

[7] The court notes that "**BOX 20 of the SF 1449**," (capitalization and emphasis in original), is labeled "Schedule of Supplies/Services," which, according to FAR 52.212-4, is given first precedence among contract documents to resolve conflicts. See 48 C.F.R. § 52.212-

> **response to Solicitation W56JSR-20-R-0011, is hereby incorporated into this award in its entirety by reference, together with Exhibit A "End User Ordering Document" and Exhibit A-1 "Oracle Federal Master Agreement General Terms".**

(capitalization and emphasis in original; footnote added). Plaintiff also alleges in its complaint that

> [o]n May 29, 2020, Seneca again requested confirmation that the Seneca Global Services, LLC proposal Price Quote – REV 1, dated May 11, 2020, was incorporated into the award in its entirety, together with Exhibit A "End User Ordering Document" and Exhibit A-1 "Oracle Federal Master Agreement General Terms." Mr. Newberg responded on behalf of the Army that this "[was] the government's intent" and that, combined with the Standard Form 1449 contract that Mr. Newberg had prepared, "[t]he Four documents together can be considered the contract."

(first alteration added; other alterations and capitalization in original).[8] According to plaintiff's complaint, "in reliance on the contracting officer's confirmation of the contract terms, Seneca signed the Contract on May 29, 2020." On May 31, 2020, Contracting Officer Newberg countersigned Contract No. W56JSR-20-C-0003, on Standard Form 1449, on behalf of the government, making May 31, 2020 the effective date for Contract No. W56JSR-20-C-0003.

The Contracting Officer's Final Decision on plaintiff's Certified Claim, issued by Contracting Officer Perez on July 29, 2024, which is discussed more fully below, described the execution of Contract No. W56JSR-20-C-0003 as follows:

---

4(s) (2020). The court also notes that in this Opinion the court cites to the version of the FAR, codified in Title 48 of the Code of Federal Regulations, that was in effect at the time the parties entered into Contract No. W56JSR-20-C-0003 on May 31, 2020.

[8] The court notes that according to the Contracting Officer's Final Decision in the record before the court, Contracting Officer Newberg's same May 29, 2020 email referenced above also stated: "I will include a paragraph once our legal department let's [sic] know how they will like it phrased." (alteration in original). There is no evidence in the record before the court that Contracting Officer Newberg subsequently confirmed that Seneca's proposed terms were acceptable to the government before or after Contract No. W56JSR-20-C-0003 was executed on May 31, 2020.

> c. On May 29, 2020, at 1532 hours, the Contracting Officer (KO),[9] Mr. Richard Newberg, sent Mr. Jesinsky[10] a copy of Standard Form (SF) 1449 (Contract No. W56JSR-20-C-003 [sic]) for Seneca's review and signature.
>
> d. On May 29, 2020, at 1548 hours, Mr. Jesinsky digitally signed the contract (SF 1449) on behalf of Seneca and emailed it back to Mr. Newberg at 1621 hours. Relevant here, Mr. Jesinsky posed the following question to Mr. Newberg at 1621 hours:
>
>> "In reference to Contract No. W56JSR-20-C-0003, please confirm via response to this email that the Seneca Global Services, LLC proposal Price Quote – REV 1 dated May 11, 2020, offered in response to Solicitation W56JSR-20-R-0011, is hereby incorporated into this award in its entirety by reference, together with Exhibit A "End User Ordering Document" and Exhibit A-1 "Oracle Federal Master Agreement General Terms"."
>
> e. Mr. Newberg replied at 1626 hours that it "is the government's intent" and that "I will include a paragraph once our legal department let's [sic] know how they will like it phrased."
>
> f. On May 31, 2020, Mr. Newberg signed the SF 1449. While Exhibit A and Exhibit A-1 of Seneca's Price Quote – REV 1 was incorporated into the SF 1499 [sic] as Attachment 0001, none of the remainder of Seneca's Price Quote – REV 1 to include Seneca's Payment Terms was incorporated into the signed contract.

(first and third alterations and footnotes added; second alteration in original). Thus, according to the Contracting Officer's Final Decision, Mr. Jesinsky asked Contracting Officer Newberg, on May 29, 2020 at 4:21 P.M., to confirm that the Price Quote, together with the Exhibit A "End User Ordering Document" and the Exhibit A-1 "Oracle Federal Master Agreement General Terms," were incorporated into Contract No. W56JSR-20-C-0003 after Mr. Jesinsky had already signed Contract No. W56JSR-20-C-0003 on May 29, 2020 at 3:48 P.M. on behalf of Seneca on the Standard Form 1449 provided to him by the government.

The Standard Form 1449 executed by the parties on May 31, 2020 included ten Firm-Fixed-Price (FFP) Contract Line Item Numbers (CLINs), with separate CLINs for the

---

9 Documents in the record currently before the court, including the parties' briefs, sometimes use the acronym "KO" to refer to the Army contracting officers.

10 According to the record before the court, Mr. Matthew Jesinsky was the President of Seneca at the time he signed the Standard Form 1449 on behalf of Seneca on May 29, 2020.

base year and each option year, as well as separate CLINs for Oracle Software licenses, and maintenance/technical support services, respectively. Specifically, the Standard Form 1449 included a CLIN 0001 for "UNLIMITED LICENSING AGREEMENT – ORACLE SOFTWARE," CLIN 0002 for "MAINTENANCE AND TECHNICAL SUPPORT SERVICE," CLIN 1001 for "OPTION YEAR 1 – UNLIMITED ORACLE LICENSES," CLIN 1002 for "OPTION YEAR 1 – SOFTWARE MAINTENANCE AND TECHNICAL SUPPORT," CLIN 2001 for "OPTION YEAR 2 – UNLIMITED ORACLE LICENSES," CLIN 2002 for "OPTION YEAR 2 – SOFTWARE MAINTENANCE AND TECHNICAL SUPPORT," CLIN 3001 for "OPTION YEAR 3 – UNLIMITED ORACLE LICENSES," CLIN 3002 for "OPTION YEAR 3 – SOFTWARE MAINTENANCE AND TECHNICAL SUPPORT," CLIN 4001 for "OPTION YEAR 4 – UNLIMITED ORACLE LICENSES," and CLIN 4002 for "OPTION YEAR 4 – SOFTWARE MAINTENANCE AND TECHNICAL SUPPORT." (all emphasis and capitalization in original). The ten CLINs listed in the Standard Form 1449, including the option-year CLINs, added up to a total contract value of $44,970,000.00. The Standard Form 1449 indicated, however, that only $10,000,000.00 was obligated for the base year, which included $6,760,000.00 for CLIN 0001 (Unlimited Licensing Agreement – Oracle Software) and $3,240,000.00 for CLIN 0002 (Maintenance and Technical Support Service). Moreover, the Standard Form 1449 indicated a base year period of performance of May 31, 2020 to May 30, 2021, with an Option Year 1 period of performance of May 31, 2021 to May 30, 2022, an Option Year 2 period of performance of May 31, 2022 to May 30, 2023, an Option Year 3 period of performance of May 31, 2023 to May 30, 2024, and an Option Year 4 period of performance of May 31, 2024 to May 30, 2025. Based on the record currently before the court, the parties agree that the Congressional appropriation applicable to Contract No. W56JSR-20-C-0003, at the time Seneca and defendant executed Contract No. W56JSR-20-C-0003 on May 31, 2020, was the Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, Div. A., Tit. 3, 133 Stat. 2317, 2327 (2019). The Consolidated Appropriations Act, 2020 allocated $7,581,524,000.00 in funding to the Army for "OTHER PROCUREMENT," including for "communications and electronic equipment," and allowed that funding "to remain available for obligation until September 30, 2022." Id. (capitalization in original).[11]

[11] The provision of the Consolidated Appropriations Act, 2020 cited by plaintiff and defendant as the Congressional appropriation applicable to Contract No. W56JSR-20-C-0003 at the time the parties executed Contract No. W56JSR-20-C-0003 on May 31, 2020, stated:

> For construction, procurement, production, and modification of vehicles, including tactical, support, and non-tracked combat vehicles; the purchase of passenger motor vehicles for replacement only; communications and electronic equipment; other support equipment; spare parts, ordnance, and accessories therefor; specialized equipment and training devices; expansion of public and private plants, including the land necessary therefor, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; and procurement and installation of equipment, appliances, and machine tools in public and private plants; reserve plant and Government

Under the "CONTRACT CLAUSES," (capitalization in original), section of the Standard Form 1449 executed by the parties, certain FAR contract clauses were stated in full or incorporated into Contract No. W56JSR-20-C-0003 by reference. As particularly relevant to the dispute currently before the court, the signed Standard Form 1449 included the option clause at FAR 52.217-9 in full, which stated:

> (a) The Government may extend the term of this contract by written notice to the Contractor within 30 days of contract award provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least 30 days before the contract expires. The preliminary notice does not commit the Government to an extension.
>
> (b) If the Government exercises this option, the extended contract shall be considered to include this option clause.
>
> (c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed 60 months.

The Standard Form 1449 also incorporated FAR 52.212-4 by reference, which was titled "Contract Terms and Conditions – Commercial Items" and contained general terms and conditions for contracts for commercial items. See 48 C.F.R. § 52.212-4. Specifically, as relevant to the dispute currently before the court, FAR 52.212-4 includes the following contract clauses:

> (b) Assignment. The Contractor or its assignee may assign its rights to receive payment due as a result of performance of this contract to a bank, trust company, or other financing institution, including any Federal lending agency in accordance with the Assignment of Claims Act (31 U.S.C. 3727). However, when a third party makes payment (e.g., use of the Governmentwide commercial purchase card), the Contractor may not assign its rights to receive payment under this contract.
>
> . . .
>
> (l) Termination for the Government's convenience. The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms

---

> and contractor-owned equipment layaway; and other expenses necessary for the foregoing purposes, $7,581,524,000, to remain available for obligation until September 30, 2022.

Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, Div. A., Tit. 3, 133 Stat. 2317, 2327.

> of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose. This paragraph does not give the Government any right to audit the Contractor's records. The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided.
>
> . . .
>
> (s) Order of precedence. Any inconsistencies in this solicitation or contract shall be resolved by giving precedence in the following order: (1) the schedule of supplies/services; (2) The Assignments, Disputes, Payments, Invoice, Other Compliances, Compliance with Laws Unique to Government Contracts, and Unauthorized Obligations paragraphs of this clause; (3) the clause at 52.212-5;[12] (4) addenda to this solicitation or contract, including any license agreements for computer software; (5) solicitation provisions if this is a solicitation; (6) other paragraphs of this clause; (7) the Standard Form 1449; (8) other documents, exhibits, and attachments; and (9) the specification.

48 C.F.R. § 52.212-4 (all emphasis and capitalization in original; footnote and omissions added). Additionally, Section H of the Standard Form 1449 executed by the parties on May 31, 2020, titled "Special Contract Requirements," stated, in relevant part:

> The Government does not agree to any terms and conditions of an End User License Agreement (EULA), Terms of Service (TOS), or similar legal instrument or agreement that violate Federal law or regulations including any terms and conditions contained in any third party End User License Agreement (EULA), Terms of Service (TOS), or similar legal instrument or agreement.
>
> . . .
>
> If the Contractor is the software licensor or vendor/provider of the software, then the Contractor agrees that any term or condition in the EULA, TOS, or similar legal instrument or agreement that violates this provision is not applicable to the Government, even if such a term or condition is included in a EULA, TOS, or similar legal instrument or agreement.

---

[12] The clause at FAR 52.212-5 was titled "Contract Terms and Conditions Required to Implement Statutes or Executive Orders – Commercial Items." See 48 C.F.R. § 52.212-5 (2020).

> If the Contractor is not the software licensor or vendor/provider of the software, then the Contractor agrees that it has specifically negotiated the EULA, TOS, or similar legal instrument or agreement such that the terms and conditions of the EULA, TOS, or similar legal instrument or agreement is compliant with this provision before delivery of the software or software maintenance/support. If the contractor is not the software licensor or vendor/provider of the software maintenance/support and the software (or software maintenance/support) is subject to a term or condition of the EULA, TOS, or similar legal instrument or agreement that violates this provision, then the Contractor agrees to bears [sic] full financial and legal responsibility for such violation and the Government is absolved from any such responsibility.
>
> This clause only applies to a EULA, TOS, or similar legal instrument or agreement where the Government is obligated to accept the terms and conditions of the EULA, TOS, or similar legal instrument or agreement as a condition of using the software or software maintenance/support.

(capitalization in original; alteration and omission added).

Although the Standard Form 1449 executed by the parties on May 31, 2020 did not include a Section J, which is generally used to list attachments to Standard Form 1449 contracts, see 48 C.F.R. § 15.204-1 (2020), a "conformed" version of Contract No. W56JSR-20-C-0003, which was submitted to the court by defendant upon the court's request, and which contains the contract attachments and post-contracting modifications, indicates that the Exhibit A "End User Ordering Document" and the Exhibit A-1 "Oracle Federal Master Agreement General Terms" from Seneca's Price Quote were incorporated into the Standard Form 1449 as "Attachment 0001."[13] The "conformed" version of

---

[13] The undersigned issued an Order indicating that the Contracting Officer's Final Decision referenced attachments and modifications to Contract No. W56JSR-20-C-0003 that were not in the record before the court and instructing defendant to file a copy of all attachments and modifications to Contract No. W56JSR-20-C-0003 in defendant's possession. In response, defendant filed a "**NOTICE OF FILING OF ADDITIONAL MATERIALS**," (capitalization and emphasis in original), which stated:

> The contract bilaterally executed by the parties in May 2020, which we previously submitted for the Court's consideration alongside our pending motion to dismiss, does not appear to reference any attachments or exhibits. However, a "conformed" version of the contract, which incorporates all post-contracting modifications, does reference, on page 29 of 29, three attachments. The first attachment—Attachment 0001—is comprised of the Oracle End User Ordering Document and Federal Master Agreement General Terms, which were listed as Exhibits A and A-1 to plaintiff's Proposal. The remaining attachments—Attachment 002 [sic] and Attachment 003 [sic]—are the notice of assignment and instrument of

Contract No. W56JSR-20-C-0003 also included a revised Section H, titled "Special Contract Requirements," which took the place of the first quoted paragraph of Section H of the Standard Form 1449 quoted above:

> The Government does not agree to any terms and conditions of Oracle Federal Master Agreement General Terms and its Schedule P – Program FEDERAL, and the End User Ordering Document, or similar legal instrument or agreement that violate Federal law or regulations including any terms and conditions contained in any third party End User License Agreement (EULA), Terms of Service (TOS), or similar legal instrument or agreement.

(all capitalization in original).[14] Moreover, as indicated above, in the Contracting Officer's Final Decision, Contracting Officer Perez acknowledged that "Exhibit A [End User Ordering Document] and Exhibit A-1 [Oracle Federal Master Agreement General Terms] of Seneca's Price Quote – REV 1 was incorporated into the SF 1499 [sic] as Attachment 0001." (alterations added). The Standard Form 1449 executed by the parties did not, however, contain any reference to Seneca's Price Quote, nor did the Standard Form 1449 contain any reference to the Payment Addendum section of Seneca's Price Quote. In fact, in block 29 of the Standard Form 1449 executed by the parties, the following sections remained not filled out: "Award Of Contract: Ref. [left empty] Offer Dated [left empty]. Your Offer On Solicitation (Block 5), Including Any Additions Or Changes Which Are Set Forth Herein, Is Accepted As To Items: [left empty.]" (alterations added; capitalization and formatting in original).[15]

According to Seneca's complaint, after executing Contract No. W56JSR-20-C-0003 on Standard Form 1449, Seneca "assigned its rights, title, and interest to the contract payments to" a third party. There is, however, some inconsistency in the record

---

> assignment, both created during contract performance. The "conformed" version of the contract also describes, on pages 2 to 4 of 29, nine modifications to the contract.
>
> To provide the Court with a complete picture of post-contracting activity, we are appending to this notice the "conformed" contract, Attachments 001 [sic] to 003 [sic], and Modifications P00001 to P00009.

(alterations added; internal references omitted).

[14] The court notes that all other language in Section H remained unchanged between the original Section H included in the Standard Form 1449 executed by the parties on May 31, 2020 and the revised Section H included in the "conformed" version of Contract No. W56JSR-20-C-0003 in the record before the court.

[15] The court notes that block 5 of the Standard Form 1449 executed by the parties in the record before the court, which is titled "Solicitation Number," also was left empty.

currently before the court regarding when, and to whom, Seneca assigned its rights to the contract payments. According to Seneca's complaint, "[o]n May 29, 2020, Seneca assigned its right, title and interest to the contract payments to ePlus [Government, Inc.], which would receive payments under the Contract through a third-party paying agent." (alterations added). Seneca's complaint continues:

> 26. On June 1, 2020, Seneca assigned its rights, title, and interest to the contract payments to Wilmington Trust[, National Association], which acted as the paying agent for the Contract, with ePlus [Government, Inc.] being the ultimate beneficiary.
>
> 27. Thereafter, through an Assignment Agreement entered into as of June 29, 2020, Wells Fargo [Equipment Finance, Inc.] acquired from ePlus, all of ePlus' right, title, and interest in the payments due under the Contract.
>
> 28. In connection with the assignment agreement between ePlus and Wells Fargo, Wilmington Trust remained the paying agent, but Wells Fargo became the sole beneficiary of the Contract's proceeds.

(alterations added).

On June 1, 2020, Contracting Officer Newberg signed a Notice of Assignment acknowledging Seneca's assignment of its rights, title, and interest to the contract payments under Contract No. W56JSR-20-C-0003 to Wilmington Trust, National Association. The Notice of Assignment stated, in relevant part:

> This has reference to Solicitation/Contract/Order for Commercial Items Contract No. W56JSR-20-C-0003 effective May 31, 2020, including Solicitation W56JSR-20-R-0011 Price Quote – REV 1 submitted by Seneca Global Services, LLC on May 11, 2020, and EXHIBIT A End User Ordering Document and EXHIBIT A-1 Oracle Federal Master Agreement General Terms thereto and all subsequent amendments, modifications, renewals, attachments, and supplements thereto, and any additional delivery orders in connection with the exercise by the Government of the options described therein, entered into between Seneca Global Services, LLC . . . and ACC-APG [Army Contracting Command – Aberdeen Proving Ground] Division E . . . for the lease of Oracle software.
>
> Monies due or to become due under the contract described above have been assigned to the undersigned [Wilmington Trust, National Association] under the provisions of the Assignment of Claims Act of 1940, as amended (31 U.S.C. § 3727, 41 U.S.C. § 6305).
>
> A true copy of the Instrument of Assignment executed by the Contractor on June 1, 2020 is attached to the original notice.

> Payment(s) due or to become due under this contract should be made to the undersigned assignee [Wilmington Trust, National Association].

(alterations and omissions added; capitalization in original). The Notice of Assignment also was signed by Lynette J. Hilgar, Banking Officer, on behalf of Wilmington Trust, National Association. Similarly, the Instrument of Assignment, which was signed by Mr. Jesinsky on behalf of Seneca, stated:

> Reference: Solicitation/Contract/Order for Commercial Items Contract No. W56JSR-20-C-0003 effective May 31, 2020, issued by ACC-APG Division E to Seneca Global Services, LLC ("**Contractor**" or "**Assignor**") for use by the US Army Distributed Common Ground System ("**User**"), including Solicitation: W56JSR-20-R-0011 Price Quote – REV 1 submitted by Seneca Global Services, LLC on May 11, 2020 and EXHIBIT A End User Ordering Document and EXHIBIT A-1 Oracle Federal Master Agreement General Terms thereto, and all other amendments, revisions, attachments, modifications, renewals and supplements thereto and any additional delivery orders issued in connection with the exercise by the User of the options described therein (collectively, the "**Order**").
>
> KNOW ALL MEN BY THESE PRESENTS: That Seneca Global Services, LLC, the undersigned Contractor, as Assignor, for value received and in accordance with the Assignment of Claims Act of 1940, as amended (31 U.S.C. § 3727, 41 U.S.C. § 6305), does hereby assign, set over, and transfer unto Wilmington Trust, National Association, as Assignee, all of Assignor's rights and interest to all moneys and/or payments due or to become due, from the User or from any agency or department thereof accruing under the Order as stipulated in the Notice of Assignment dated as of June 1, 2020.
>
> The Assignee shall not be held responsible for the performance of any obligation of the Assignor under the Order.

(capitalization and emphasis in original).

Additionally, on June 3, 2020, Contracting Officer Newberg issued Modification P00001 to Contract No. W56JSR-20-C-0003, on Standard Form 30, which stated:

> The purpose of this modification is to assign payments from Seneca Global Serv ices [sic] ,, [sic] LLC . . . to Wilmington Trust National Associations [sic] . . . . The attached Notice of Assignment and Instrument of Assignment in accordance with FAR 52.232-23 Assignment of Claims is herby [sic] incorporated into this contract.

(alterations and omissions added). Under Section J, titled "LIST OF ATTACHMENTS," (capitalization in original), Modification P00001 listed: "Attachment 0002 NOTICE OF

ASSIGNMENT" and "Attachment 0003 INSTRUMENT OF ASSIGNMENT." (capitalization in original).

In addition to Modification P00001, the Army also issued multiple other modifications to Contract No. W56JSR-20-C-0003 between 2020 and 2023. On June 25, 2020, the Army issued Modification P00002 to Contract No. W56JSR-20-C-0003, on Standard Form 30, "to fix a typo with the DUNS number for Wilmington Trust National Associates [sic]" that was indicated in Modification P00001. (alteration added). On October 19, 2020, the Army issued Modification P00003 to Contract No. W56JSR-20-C-0003, on Standard Form 30, to incorporate a FAR clause and attachment dealing with compliance with Section 889 of the John S. McCain National Defense Authorization Act for Fiscal Year 2019. On May 31, 2021, the Army issued Modification P00004 to Contract No. W56JSR-20-C-0003, on Standard Form 30, to exercise Option Year 1 with a period of performance of May 31, 2021 to May 30, 2022, and on May 31, 2022, the Army issued Modification P00005 and Modification P00006 to Contract No. W56JSR-20-C-0003, on Standard Form 30, to exercise Option Year 2 with a period of performance of May 31, 2022 to May 30, 2023, including CLIN 2001 (Unlimited Oracle Licenses) and CLIN 2002 (Software Maintenance and Technical Support).[16] On September 2, 2022, the Army issued Modification P00007 to Contract No. W56JSR-20-C-0003, on Standard Form 30, "to resolve a Request for Equitable Adjustment on the contract W56JSR-20-C-0003 for Technical Support for Converted and Replaced Licenses" because "[t]he contract inadvertently did not include the Technical Support CLINs [for Converted and Replaced Licenses] at the time of award." (alterations added). On December 5, 2023, the Army issued Modification P00008 to Contract No. W56JSR-20-C-0003, on Standard Form 30, "to transfer purchasing office responsibility" to a different purchasing office within the Army Contracting Command. On December 13, 2023, the Army issued Modification P00009 to Contract No. W56JSR-20-C-0003, on Standard Form 30, to appoint Ms. Perez as the Contracting Officer and to update certain DFARS clauses which are not relevant to the dispute currently before the court.

Seneca alleges in its complaint that it "delivered the [Oracle] Software in accordance with the Proposal and Contract and, as a result, fully performed its obligations under the Contract." (alteration added). Seneca also alleges in its complaint that "[t]he Army's Chief Engineer, Jess Stock, acknowledged acceptance of the software on June 23, 2020, under the terms of the Contract" by issuing a Certificate of Acceptance. (alteration added).[17] The Certificate of Acceptance stated, in full:

---

[16] The court notes that, at the time the Army exercised Option Year 1 on May 31, 2021 and Option Year 2 on May 31, 2022, the Consolidated Appropriations Act, 2020, funding for "OTHER PROCUREMENT," (capitalization in original), was still available to the Army. <u>See</u> Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, Div. A., Tit. 3, 133 Stat. 2317, 2327 (stating that funding remained "available for obligation until September 30, 2022").

[17] As indicated below, although the Certificate of Acceptance identified the date of acceptance as "<u>3 JUNE 2020</u>," (capitalization and emphasis in original), the Certificate of

> Certificate of Acceptance related to: Solicitation/Contract/Order for Commercial Items Contract No. W56JSR-20-C-0003 effective May 31, 2020, issued by ACC-APG Division E to Seneca Global Services, LLC ("**Contractor**") for use by the US Army Distributed Common Ground System ("**User**"), including Solicitation: W56JSR-20-R-0011 Price Quote – REV 1 submitted by Seneca Global Services, LLC on May 11, 2020 and EXHIBIT A End User Ordering Document and EXHIBIT A-1 Oracle Federal Master Agreement General Terms thereto, and all subsequent amendments, modifications, renewals, attachments and supplements thereto and any additional delivery orders in connection with the exercise by the User of the options described therein (collectively, the "**Order**")
>
> 1. Software: The User hereby certifies that the Software set forth in the Order has been delivered to the User, inspected by the User, found to be in good order and accepted, all on the Date of Acceptance set forth below:
>
> Date of Acceptance: 3 JUNE 2020
>
> 2. Representations by the User: The User hereby represents and warrants to the Contractor and its assignee that on the Date of Acceptance set forth above:
>
> (a) the representations and warranties of the User set forth in the Order are true and correct in all material respects as though made on and as of such Date of Acceptance; (b) the User has satisfied or complied with all requirements set forth in the Order to be satisfied or complied with on or prior to such Date of Acceptance; (c) no Default or Event of Default under the Order has occurred and is continuing on such Date of Acceptance; and (d) the Software is insured in accordance with the Order.

(capitalization and emphasis in original).

Seneca alleges in its complaint that "at the outset of the Contract period, the Army downloaded the necessary [Oracle] Software," "Seneca successfully completed the base year," and "Option Year 1 and 2 were similarly completed to the Army's satisfaction." (alteration added). In the Contracting Officer's Final Decision, Contracting Officer Perez agreed with Seneca that: "[t]he contract was successfully performed from May 31, 2020 to May 30, 2021 (base year)," "[t]he contract was successfully performed from 31 May 2021 to 30 May 2022 (i.e., Option Year 1)," and "[t]he contract was successfully performed from 31 May 2022 to 30 May 2023 (i.e., Option Year 2)." (alterations added). On April 17,

---

Acceptance was signed by Ms. Jess Stock, the Army's then Chief Engineer, on June 23, 2020. Moreover, neither party represents to the court that Ms. Stock was a Contracting Officer with the authority to bind the government at the time she signed the Certificate of Acceptance on behalf of the government on June 23, 2020.

2023, however, the Army informed Seneca that "the requirement for Option Year 3 has been cancelled and that Option Year 3 will not be exercised."

Specifically, regarding the Army's decision not to exercise Option Year 3, the Contracting Officer's Final Decision stated:

> On April 13, 2023, Seneca sent a reminder email to KO that Option Year 3 is due May 30, 2023. On April 17, 2023, the Army responded to Seneca's April 13, 2023 email informing Seneca the requirement for Option Year 3 has been cancelled and that Option Year 3 will not be exercised.

The Contracting Officer's Final Decision continued:

> On April 18, 2023, Seneca sent a letter in response to the Army. In the letter, Seneca argued that absent a lack of funding, the Payment Terms required the Army to exercise Option Year 3. Seneca argued that failure to do so before May 30, 2023, would amount to a breach of contract in the amount of $14,970,000[18] and the loss of "the use of the Contract software."

(footnote added). The Contracting Officer's Final Decision further stated that, "[o]n May 30, 2023, the contract lapsed as Option Year 2 was complete and Option Year 3 was not exercised." (alteration added).[19] According to the Contracting Officer's Final Decision:

> On June 5, 2023, Mr. Haaga, Seneca's Vice President, Legal, Contracting and Compliance, argued via email that the Payment Terms were incorporated [into Contract No. W56JSR-20-C-0003] by reference. Mr. Haaga stated that the Payment Terms were incorporated by (1) Modification P00001, specifically a "Notice of Assignment" and "Instrument of Assignment" dated June 1, 2020; and (2) a Certificate of Acceptance dated

---

[18] The $14,970,000.00 amount referenced in Seneca's April 18, 2023 letter is equal to the total pricing indicated in the Standard Form 1449 for CLINs 3001, 3002, 4001, and 4002, which were the "Unlimited Oracle Licenses" and "Software Maintenance and Technical Support" CLINs for Option Years 3 and 4.

[19] In its reply brief in support of its current motion to dismiss, defendant states that "Congress subsequently appropriated additional funds that could have enabled the Army to exercise Option Years 3 and 4." At oral argument in the above captioned case, plaintiff's counsel represented to the court that "[t]he third option [year] would have been executed on May 30th or May 31, 2023, and there were appropriations that were available at that particular point in time," pursuant to the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. A., Tit. 3, 136 Stat. 4459, 4577 (2022). (alterations added). The Consolidated Appropriations Act, 2023, allocated $8,668,148,000.00 to the Army for "OTHER PROCUREMENT," including "communications and electronic equipment," and allowed that funding "to remain available for obligation until September 30, 2025." Id. (capitalization in original).

> June 3, 2020. The Army disagreed via email and found that while each document references Seneca's proposal (W56JSR-20-R-0011 Price Quote -REV 1), neither contained <u>clear and express language</u> that the purpose was to incorporate Seneca's proposal into the Contract. To the contrary, these documents (1) merely notify the Army of Seneca's assignment to Wilmington Trust[, National Association] IAW [in accordance with] FAR 52.212-4(b), an existing right Seneca possessed under the awarded contract; and (2) the Army's subsequent acceptance of the ordered software.

(alterations added; emphasis and capitalization in original).

According to plaintiff's complaint, "[o]n October 24, 2023, Seneca filed a Request for Equitable Adjustment ('REA') with the Army on behalf of Wells Fargo,[20] requesting $8,490,000 for the balance of the Contract price for the [Oracle] Software license, incurring additional administrative costs associated with pursuing the REA." (alterations and footnote added). On February 26, 2024, the Army denied Seneca's REA.

Thereafter, on April 17, 2024, Seneca submitted a Certified Claim to Contracting Officer Perez on behalf of itself and Wells Fargo Equipment Finance, Inc.[21] Seneca's Certified Claim stated:

> Contractor submits this Claim because the United States Department of the Army ("**Army**") after exercising two (2) option years in a row elected not to exercise the contractual option for the third option year of the Contract thereby breaching the Contract, failing to undertake its best efforts to obtain the necessary funding to exercise the Contract's third option year period, and failing to renew the Contract when the circumstances for non-renewal did not exist. Further, the Army's failure to exercise the option constituted a breach of warranty which caused the Contractor financial harm, as the Army's decision not to exercise the option was in fact a cancellation of the Contract and termination notice for the Contract that occurred after the Contractor fully performed its obligations under the Contract – namely the Contractor's purchasing of noncancellable Oracle software licenses and providing that software to the Government at the discounted pricing

[20] As indicated above, plaintiff's complaint states that "[o]n June 1, 2020, Seneca assigned its rights, title, and interest to the contract payments to Wilmington Trust[, National Association], which acted as the paying agent for the Contract, with ePlus [Government, Inc.] being the ultimate beneficiary" and "[t]hereafter, through an Assignment Agreement entered into as of June 29, 2020, Wells Fargo [Equipment Finance, Inc.] acquired from ePlus, all of ePlus' right, title, and interest in the payments due under the Contract." (alterations added).

[21] Seneca's Certified Claim also identified the "Parties" as itself, Seneca Global Services, LLC, and Wells Fargo Equipment Finance, Inc.

> specified under the Contract which contemplated that all four (4) of the Contract's option years would be fully exercised.

(emphasis in original). Under the heading "Claim 1 – The Army Breached the Contract," (capitalization in original), Seneca alleged in its Certified Claim:

> Pursuant to the Payment Terms, which were incorporated into the Contract, the Army was obliged to renew due to its substitution of other software pursuant to the terms of the Contract, and its failure to do so was an independent breach of Contract. The Contract provided that: "[i]f the Government elects not to exercise its option to renew or terminates the order for convenience or non-appropriation, but expends funds to pay for products, software, and/or services that perform the functions which the System was procured to perform, then the Government will be deemed to have had funds available." It also stated that: "[t]he Government may elect not to renew the order at the end of any base or option period **only** if adequate funds have not been made available to the Government in an amount sufficient to continue to make the payment amounts." Since, as noted above, the Government is acquiring other software to perform the functions of the [Oracle] Software and expending funds to do so,[22] under the first just-quoted Contract terms, the Government had funds available to exercise its renewal option. And, per the second just-quoted term, the failure to exercise the option is a breach of contract, because lack of available funds was the only circumstance allowing the Government to not exercise the renewal option.

(first and second alterations and emphasis in original; third alteration and footnote added; internal references omitted).

---

[22] Plaintiff alleges in its complaint that, "[u]pon information and belief, the Government is acquiring or has acquired other software to perform the functions of the [Oracle] Software and expending funds to do so, demonstrating that the Army had funds available to extend the Contract in Option Years 3 and 4." (alterations added). Likewise, in its Certified Claim, plaintiff alleges that "[b]ased on recent conversations with Oracle, it is Contractor's understanding that DCGS-A has reached out to Oracle with inquiries regarding [Oracle] Software security patches, which would have been provided under the Contract had the third option year been exercised." (alterations added). Moreover, in plaintiff's response to defendant's motion to dismiss, plaintiff states that "the Army purchased from Oracle other software security patches for the DCGS[-A] program, which would have been provided under the Contract had Option Year 3 or 4 been paid." (alteration added). Although defendant does not explicitly respond to plaintiff's allegations that the Army purchased other software security patches for the DCGS-A program from Oracle, defendant stated in its reply brief that it does not "dispute that Congress subsequently appropriated additional funds that could have enabled the Army to exercise Option Years 3 and 4."

Under the heading "Claim 2 – The Army Breached Its Covenant of Good Faith and Fair Dealing," (capitalization in original), Seneca alleged in its Certified Claim:

> [I]n communications with Red River[23] and Oracle, the Army specifically discussed the requirement for lower annual cost and more capability. As such, Red River and Oracle designed and secured a contract mechanism that would achieve the Army's goals as evidenced by the terms of the Contract. The Contractor prepared its Proposal based on the Army's discussions with Red River, ePlus [Government, Inc.], and Oracle and subsequently relied on those discussions when the Contractor agreed to enter into the Contract with the Army. This resulted in a proposal from the Contractor that was structured with discounted pricing but predicated on the Contract running for the full five (5) years which was the base year and the four (4) option years. The Army's breach of the covenant of good faith and fair dealing undermined the reasonable expectations of the contracting parties. The Payment Schedule agreed to by the Government was essential to the proper operation of the system for the entire term of the order, including all renewal options.

(alterations and footnote added).

Under the heading "Claim 3 – The Army Breached Its Warranty," (capitalization in original), Seneca alleged in its Certified Claim:

> The Army's warranty was as follows: "Contractor accepts the payment amounts in the Payment Schedule below in reliance on the Government's undertakings pursuant to these terms, including the Government's warranty that the use of the System is essential to its proper operation for the entire term of this Order including all renewal options." The Army's decision not to exercise the third option year and failure to use its best efforts to secure funding caused the Contractor to incur financial harm in the form of expectancy damages, measured relative to expected profits; restitution damages, relative to the time the Contract was signed; and reliance damages, as a sum of damages sustained as a result of a breach, including, without limitation, costs incurred preparing and prosecuting this claim.
>
> The Contract's terms established the Payment Terms that would be incorporated into any contracts or agreements and would "supersede any inconsistent terms in the order." This integration clause ruled out other interpretations of the Payment Terms, renewal provisions, and the specified period of performance that would span five (5) years under the Contract.

[23] As indicated above, Seneca alleges in its complaint that Red River is "an authorized Oracle reseller" that "met with representatives from the Army to discuss the acquisition of the [Oracle] Software and related software maintenance support ('Support') under a payment plan with third-party financing." (alteration added).

> The explicit Contract terms established that the Army would exercise its best efforts and only alter the period of performance if it discovered funding would be made unavailable. This established a warranty under the Contract, that the Army forsakes, despite the Army's documented assurances of the existence of these facts and incorporation of the agreed-upon terms into the Contract.
>
> The Parties [Seneca and Wells Fargo Equipment Finance, Inc.] reasonably relied on the foregoing warranties in procuring non-cancellable [Oracle] Software and providing the [Oracle] Software at a favorable price, made available to the Army under the Contract. The Army's failure to adhere to the Contract and warranties conferred substantial financial harm to the Contractor. Consequently, the Army's actions breached the Contract, along with the warranty.

(alterations added; internal references omitted).

Under the heading "Claim 4: The Army is Estopped from Denying Liability for Its Actions," (capitalization in original), Seneca alleged in its Certified Claim:

> By its actions, the Army is estopped from asserting that it retained discretion to forego the two (2) remaining option years.
>
> . . .
>
> The Army received a discounted price under the base year of the Contract for the enhanced software package and maintenance support for the previous contract's software with the understanding that the initial savings would be spread out across the Contract's remaining scheduled payments which constituted the exercise of all the option years. The Army accepted, and appreciated this proposed payment structure and terms, accounting for the software licenses and administrative costs (such as associated maintenance of the Oracle licenses), in their entirety. The Contractor incurred a substantial financial obligation to secure favorable pricing under the Contract. Based on the Contract terms, the Army had an obligation to make payments pursuant to the Contract's payment schedule which constituted the exercise of all the option years. The Army's decision not to renew the Contract contravened the accepted terms and occurred after the Contractor already contracted the [Oracle] Software and maintenance support costs for the entire 60-month period of performance, incurring costs to benefit the Army. The Contractor relied on the Contract as executed with the incorporated Payment Terms to price the [Oracle] Software as a single asset for the Army's benefit. The Army knew it was representing to the Contractor that the Army would exercise all Contract options absent lack of available funds.

(alterations and omission added).

Under the heading "Claim 5: Termination for Convenience," (capitalization in original), Seneca alleged in its Certified Claim:

> As an alternate to Claim 1, the non-renewal of the Contract should be considered a termination for convenience by the Government.
>
> . . .
>
> [T]he Contract terms established the ongoing need for the [Oracle] Software licenses and the full five-year term. See Ex. A. (The "Government may elect not to renew the Order at the end of any base or option period only if adequate funds have not been made available to the Government in an amount sufficient to continue to make the payments below."). Such a termination, or decision not to exact payment for the remaining option years under the license, counters the plain meaning of the Contract and the incorporated terms. Under the Contract, the Contractor's termination settlement amount upon a termination for convenience is governed by FAR § 52.212-4(l), which provides for payment to the Contractor for all work performed to date at the Contract price, including all reasonable costs, which includes the cost incurred by the Contractor to acquire the 5-year licenses required to perform its obligations under the Contract. The Army has not honored these terms.

(alterations and omission added). Seneca's Certified Claim concluded:

> As explained above, due to the improper conduct of the Army, the Parties have been damaged and are entitled to recovery of $8,490,000.00[24] from the Army for work performed under the Contract. Therefore, the Contractor respectfully requests payment from the Government in the amount of $8,490,000.00 and any attorneys' fees and interest in support of this action accumulated to date in the amount of $139,500.00. For the avoidance of

---

[24] The $8,490,000.00 amount sought in Seneca's Certified Claim, and Seneca's complaint filed in this court, is equal only to the pricing indicated in the Standard Form 1449 for CLINs 3001 and 4001, which were the "Unlimited Oracle Licenses" CLINs for Option Year 3 and Option Year 4. Notably, as opposed to Seneca's initial argument in its April 18, 2023 letter to the Army, which Seneca sent after the Army indicated it would not exercise Option Year 3, and which stated that the Army's failure to exercise Option Year 3 and Option Year 4 "would amount to a breach of contract in the amount of $14,970,000," Seneca's Certified Claim, and Seneca's complaint filed in this court, did not seek recovery for any amounts that could have become due under CLIN 3002 and CLIN 4002, the "Software Maintenance and Technical Support" CLINs for Option Year 3 and Option Year 4, had the government exercised those option years.

> doubt, Contractor reserves the right to submit additional claims as warranted by the facts of this matter.

(footnote added).

As indicated above, according to plaintiff's complaint, "[o]n July 29, 2024, Ms. Perez issued a COFD [Contracting Officer's Final Decision], denying Seneca's Certified Claim for $8,490,000, also rejecting Seneca's claim for $139,500 in administrative costs associated with pursuing the REA." (alterations added). In response to Claim 1, Seneca's allegation that the Army breached Contract No. W56JSR-20-C-0003 by deciding not to exercise Option Year 3 and Option Year 4, the Contracting Officer's Final Decision stated, in part:

> Claim 1 is denied. Simply stated, there is no breach of contract because Seneca's Payment Terms, the sole basis for this claim, were never incorporated into the contract. Seneca asserts without any factual basis on page 5 of their certified claim (The Claim) that "Pursuant to the Payment Terms, which were incorporated into the Contract, the Army was obliged to renew due to its substitution of other software pursuant to the terms of the Contract, and its failure to do so was an independent breach of Contract." Seneca, Wells Fargo, and/or its Counsel have been unable to provide any support for the assertion that Seneca's Payment Terms, or quote, were ever incorporated into the contract. There is no factual basis to support this argument. Seneca's claim is contrary to the plain language of the contract. Seneca's Payment Terms were never incorporated into Contract No. W56JSR-20-C-0003 (Contract). Seneca is unable to demonstrate that (1) the Payment Terms were included into [sic] the Contract at time of award; or that (2) the Payment Terms were later incorporated in the Contract by reference. Even <u>assuming</u> <u>arguendo</u> that the Payment Terms were incorporated into the contract, which they were not, those terms are barred by illegality as they are incompatible with federal law.

(alteration added; emphasis in original). Regarding Claim 2, Seneca's allegation that the Army breached the covenant of good faith and fair dealing by deciding not to exercise Option Year 3 and Option Year 4, the Contracting Officer's Final Decision stated, in part:

> Claim 2 is denied. There was no breach of the Covenant of Good Faith and Fair Dealing because the Army fully satisfied its contractual obligations to Seneca. The contract, by its plain terms was for a base year and four 12-month option years. It is a well-established tenet of Government contract law, that the Government has a unilateral right to exercise options. The Army awarded the contract, and paid for, the base year and two option years. Thus, the Army has fulfilled any and all contractual obligations to Seneca. Seneca asserts "the Army's breach of the covenant of good faith and fair dealing undermined the reasonable expectations of the contracting parties." However, Seneca's expectations are inconsistent with the plain

> language, and four corners, of the contract. Seneca claims their proposal was "structured with discounted pricing that predicated on the contracting [sic] running the full five (5) years." The plain language of the contract including the contract schedule, is clear that the obligation of the Army is for a base year only and the remaining years are option periods. This reflects the Army's need to revalidate requirements annually in accordance with FAR 17.207(c) and the anti-deficiency act. Nothing in the contract reflects an agreement for the Government to receive discounted pricing, nor does anything in the contract represent to Seneca that the Army would guarantee that all option years would be exercised. Such expectation by Seneca, is incompatible with FAR based contracting, and the terms of this contract.

(alteration added; internal citations omitted). With respect to Claim 3, Seneca's allegation that the Army breached a warranty by deciding not to exercise Option Year 3 and Option Year 4, the Contracting Officer's Final Decision stated, in part:

> Claim 3 is denied. There is no breach of warranty because the Army did not warrant anything, as is clear by the terms of the contract. Seneca again bases its claim on its Payment Terms, which were never incorporated into the contract. Seneca claims based on its own terms that the Army warranted, "that the use of the System is essential to its proper operation for the entire term of this Order including all renewal options." Again, Seneca's "Payment Terms" are incompatible with the plain language in the contract. The language on which Seneca bases its entire claim, including this argument, is found nowhere in the four corners of the contract. The contract, by its terms is a firm-fixed price contract for Oracle software licenses, with a base year and subsequent option years. As previously explained, the contract was unambiguous about the Army's use of option year CLINS, separately priced with specified periods of performance, and included FAR 52.217-9. The language of the contract is clear; the contract is not a multiyear or requirements contract, and it contained no warranties. Seneca's entire claim is based on terms favorable only to Seneca, which the Army would not, and did not agree to. The four corners of the contract are clear, unambiguous and do not support any of the arguments presented by Seneca on this claim.

(internal citation omitted). In response to Claim 4, Seneca's allegation that the Army is estopped from denying liability under Contract No. W56JSR-20-C-0003, the Contracting Officer's Final Decision stated, in part:

> Claim 4 is denied. The claim for estoppel is unfounded on its face. Seneca claims that "the Army is estopped from asserting that it retained discretion to forego the two (2) remaining option years" based on its Payment Terms. As stated above, the plain language of the contract contradicts Seneca's assertion. The contract terms are unambiguous about awarding a base year and subsequent option periods.

(internal citation omitted).

Finally, with respect to Claim 5, Seneca's alternative allegation that the Army's decision not to exercise Option Year 3 and Option Year 4 should be considered a termination for convenience by the government, the Contracting Officer's Final Decision stated, in part:

> Claim 5 is denied. Seneca claims that "As an alternate to Claim 1, the nonrenewal of the Contract should be considered a termination for convenience by the Government." Seneca has a fundamental misunderstanding of Government, FAR-based contracting because the Army did not terminate this contract for convenience. Rather, the contract simply lapsed when the Army did not exercise Option Year 3. In this case, the Army determined that it would not exercise the third option year on the contract with Seneca which the Army was permitted to do under the plain terms of the contract.

(internal citation omitted).

Under the heading "**QUANTUM – No Outstanding Payments Due to Seneca**," (capitalization and emphasis in original), the Contracting Officer's Final Decision stated, in part:

> Seneca received payment for the Base Year, Option Year 1 and Option Year 2, and when the Contracting Officer did not exercise Option Year 3, the contract lapsed. The Army did not receive any additional goods/services for which payment is outstanding, and Seneca has not provided any information to support entitlement to damages. Thus, there are no outstanding payments owed to Seneca.

In sum, under the heading "**DETERMINATION**," (capitalization and emphasis in original), the Contracting Officer's Final Decision concluded:

> The Army has fully met its contractual obligations to Seneca, payment was properly made for services rendered, and the contract has lapsed. Seneca is not entitled to any additional payments from the Army related to contract W56JSR-20-C-0003 awarded on May 31, 2020. For the reasons outlined above, the final decision of the Contracting Officer is that Seneca's certified claim in the amount of $8,490,000.00 plus attorneys' fees and interest in the amount of $139,500.00 is denied. Notably important is the fact that Seneca reviewed the contract without the Payment Terms, signed that contract without the Payment Terms, then asked about those Payment Terms, was told that it was the Government's intent but that it would have to be run by the legal office, and then for two plus years did absolutely nothing to inquire

> about the Payment Terms, and only AFTER the Army elected not to exercise an option, raised these arguments.

(capitalization in original).

After Contracting Officer Perez denied plaintiff's Certified Claim in full, plaintiff filed its five-count complaint in the United States Court of Federal Claims, which mirrored Seneca's claims submitted to Contracting Officer Perez. In Count I of plaintiff's complaint, plaintiff alleges that the Payment Addendum section of Seneca's Price Quote was incorporated into Contract No. W56JSR-20-C-0003 by reference and, therefore, the Army breached Contract No. W56JSR-20-C-0003 by deciding not to exercise Option Year 3 and Option Year 4. In Count II of plaintiff's complaint, plaintiff alleges that the Army breached the covenant of good faith and fair dealing by taking "unfair advantage" of a discounted pricing structure, which, according to plaintiff, was "predicated on the Contract running for the full five years," and by deciding not to exercise Option Year 3 and Option Year 4. In Count III of plaintiff's complaint, plaintiff alleges that the Army made, and breached, the following express warranty based on language in the Payment Addendum section of Seneca's Price Quote: "'Contractor accepts the payment amounts [in the Payment Schedule] in reliance on the Government's undertakings pursuant to this Addendum including the Government's warrant that the use of the system is essential to its proper operation for the entire term' of the Contract, including all renewal options." (alteration in original). In Count IV of plaintiff's complaint, plaintiff argues that "the Army is equitably estopped from asserting that it retained discretion to forego the two remaining option years under the Contract: Option Years 3 and 4." In Count V of plaintiff's complaint, plaintiff alleges that "[i]n the alternative to Count I, the non-renewal of the Contract in Option Years 3 and 4 should be considered a termination for convenience by the Army." (alteration added).

In response to plaintiff's complaint, pursuant to RCFC 12(b)(6), defendant filed a motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. In its motion to dismiss, defendant argues that "Counts I, II, and III of Seneca's complaint are premised on the assumption that the Contract imposed on the Government a duty to procure Oracle software from Seneca during all four option years," but that "the Contract did not require the Government to exercise option years." Defendant also suggests that, as a matter of law, Contract No. W56JSR-20-C-0003 could not have obligated the government to exercise Option Year 3 and Option Year 4 because, according to defendant, such an obligation "would have been contrary to law and therefore unenforceable" pursuant to the Antideficiency Act, 31 U.S.C. § 1341 (2024).[25]

---

[25] Specifically, in defendant's motion to dismiss, defendant argues:

> Here, the Army procured software licenses and related IT services from Seneca pursuant to an appropriation for "other procurement" that was "available for obligation until September 30, 2022." Consolidated Appropriations Act, 2020 at Div. A, Tit. 3, Pub. L. No. 116-93, 133 Stat. 2317, 2327 (2020 Appropriations Act). Because Congress limited its appropriation

Moreover, defendant argues that "[e]ven if the Army could have agreed to an obligation to exercise option years (which it could not), Seneca would still fail to state a claim for breach of an express contractual duty" because "the parties did not incorporate such a duty into the Contract." (alteration added). Regarding Count II of plaintiff's complaint, plaintiff's allegation that the Army breached the covenant of good faith and fair dealing, defendant also argues that it could not have breached the covenant of good faith and fair dealing by not exercising Option Year 3 and Option Year 4 because Contract No. W56JSR-20-C-0003 granted defendant "discretion over the decision whether to extend Seneca's performance beyond the base year," and "[t]he implied duty of good faith and fair dealing cannot impose an obligation 'inconsistent with' the Contract's grant of discretion." (alteration added) (quoting Dobyns v. United States, 915 F.3d 733, 739 (Fed. Cir. 2019)).

With respect to Count IV of plaintiff's complaint, plaintiff's claim that defendant should be equitably estopped from denying liability under Contract No. W56JSR-20-C-0003, defendant argues:

> Seneca's equitable estoppel argument suffers from a fundamental flaw: In the end, it is nothing more than an attempt to bind the Government to an unauthorized act. Seneca bases its equitable estoppel argument on the allegation that a Government agent represented to Seneca that the Contract contains an obligation to exercise option years. But such a representation,

---

> of funds to a particular period, the Army was only authorized to obligate these funds "to meet legitimate needs arising in the [period] of appropriation." Lee[ by Lee v. United States], 124 F.3d [1291,] 1295 [(Fed. Cir. 1997)]; see also 31 U.S.C. § 1502(a). Any contract that sought to commit the Government to the payment of yet-to-be appropriated funds, for needs that extend beyond September 2022, would necessarily violate the ADA [Antideficiency Act], thus rendering it invalid and unenforceable. See 31 U.S.C. § 1341; Hercules[ Inc. v. United States], 516 U.S. [417,] 427 [(1996)]; Rick's Mushroom[ Serv., Inc. v. United States], 521 F.3d [1338,] 1346 [(Fed. Cir. 2008)].

(first alteration in original; other alterations added). In plaintiff's response to this argument, plaintiff focuses largely on general policy arguments and offers little on substance. Plaintiff, however, suggests that the Antideficiency Act "does allow that certain contracts can commit the government to more than one year at a time, so long as certain conditions are satisfied." (emphasis in original). Given that, as discussed more fully below, the court has concluded that the Payment Addendum section of Seneca's Price Quote was not incorporated into Contract No. W56JSR-20-C-0003 between Seneca and defendant by reference, the court does not reach the question of whether or not Seneca's proposed terms and conditions included in the Payment Addendum section of Seneca's Price Quote, including the term which allegedly required defendant "to renew the Contract in Option Years 3 and 4," could violate the Antideficiency Act.

> as established above, would have been contrary to the ADA and, as such, made without legal authority.

(internal citation omitted). Defendant also argues that "[e]ven if the Court could apply equitable estoppel to award Seneca damages, doing so would not be appropriate here" because the Army did not engage in any "affirmative misconduct." (alteration added) (quoting Taylor v. McDonough, 71 F.4th 909, 925 (Fed. Cir. 2023)).

Finally, in its motion to dismiss, defendant argues that Count V of plaintiff's complaint, plaintiff's alternative allegation that the Army's decision not to exercise Option Year 3 and Option Year 4 should be treated as a termination for convenience by the government, "is founded upon Seneca's erroneous assumption that the Contract required the Government to exercise option years." Defendant also argues that its decision not to exercise Option Year 3 and Option Year 4 cannot be a "termination for convenience" because "the Government is not alleged to have stopped Seneca from performing any contractual obligations; it simply allowed the Contract to lapse by declining to extend it beyond Option Year 2, such that Seneca had no further contractual obligations after May 30, 2023." Defendant concludes, "[i]n the absence of continuing obligations under the Contract, there was nothing for the Army to terminate." (alteration added).

Subsequently, defendant filed "**DEFENDANT'S UNOPPOSED MOTION FOR LEAVE TO FILE NOTICE OF SUPPLEMENTAL AUTHORITY**," (capitalization and emphasis in original), apprising the court and plaintiff of the United States Court of Appeals for the Federal Circuit's decision in Beacon Point Associates LLC v. Department of Veterans Affairs, 139 F.4th 1306 (Fed. Cir. 2025). The undersigned issued an Order granting defendant's motion and directing plaintiff to "address the supplemental authority cited by" defendant in plaintiff's response to defendant's motion to dismiss. Thereafter, plaintiff filed a response to defendant's motion to dismiss and defendant filed a reply brief. Defendant's motion to dismiss has been fully briefed and the court has held oral argument. After defendant's motion to dismiss was fully briefed, defendant was instructed to file a copy of all attachments and modifications to Contract No. W56JSR-20-C-0003 in defendant's possession that were not previously in the record, which defendant did.

## DISCUSSION

Pursuant to RCFC 12(b)(6), defendant requests this court to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted by this court. When examining what must be pled in order to state a claim, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2) (2026); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid. [Conley v. Gibson, 355 U.S. 41, 47 (1957)]; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a

> formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Nietzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") . . . . [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim that relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56, 570 (first and fifth alteration added; footnote and other citations omitted; other alterations and omissions in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570); Boyd v. United States, 134 F.4th 1348, 1352 (Fed. Cir. 2025); Cotter Corp., N.S.L. v. United States, 127 F.4th 1353, 1366 (Fed. Cir. 2025); First Mortg. Corp. v. United States, 961 F.3d 1331, 1339 (Fed. Cir. 2020); Am. Bankers Ass'n v. United States, 932 F.3d 1375, 1380 (Fed. Cir. 2019); Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir. 2016); A & D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1157 (Fed. Cir. 2014); Bell/Heery v. United States, 739 F.3d 1324, 1330 (Fed. Cir.), reh'g and reh'g en banc denied, (Fed. Cir. 2014); Kam-Almaz v. United States, 682 F.3d 1364, 1367-68 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555)); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354-55 (Fed. Cir.), cert. denied, 562 U.S. 830 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 545, 557)), reh'g and reh'g en banc denied, (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (alteration added) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 544)); Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570)), reh'g denied (Fed. Cir.), cert. denied, 557 U.S. 937 (2009); SLSCO, Ltd. v. United States, 176 Fed. Cl. 767, 773 (2025); Day v. United States, 176 Fed. Cl. 634, 637 (2025); Otis v. United States,

176 Fed. Cl. 1, 6 (2025); Villalobos v. United States, 174 Fed. Cl. 741, 745 (2025); Tyson v. United States, 174 Fed. Cl. 205, 209 (2024), aff'd, No. 2025-1443, 2025 WL 945653 (Fed. Cir. Mar. 26, 2025); Del Mar v. United States, 173 Fed. Cl. 159, 164 (2024); BCG Fed. Corp. v. United States, 172 Fed. Cl. 543, 553 (2024); Avant Assessment, LLC v. United States, 159 Fed. Cl. 632, 636 (2022) ("As the Supreme Court explained, 'a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" (quoting Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570))); Christen v. United States, 133 Fed. Cl. 226, 229 (2017); Christian v. United States, 131 Fed. Cl. 134, 144 (2017); Vargas v. United States, 114 Fed. Cl. 226, 232 (2014); Fredericksburg Non-Profit Hous. Corp. v. United States, 113 Fed. Cl. 244, 253 (2013), aff'd, 579 F. App'x 1004 (Fed. Cir. 2014); Peninsula Grp. Cap. Corp. v. United States, 93 Fed. Cl. 720, 726-27 (2010); Legal Aid Soc'y of N.Y. v. United States, 92 Fed. Cl. 285, 292, 298 n.14 (2010). "Dismissal 'for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy.'" Conti v. United States, 168 Fed. Cl. 547, 554 (2023) (quoting Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2022)), aff'd, No. 2024-1403, 2024 WL 4100410 (Fed. Cir. Sept. 6, 2024); see also Wild v. United States, 162 Fed. Cl. 67, 70-71 (2022) ("It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) 'when the facts asserted by the claimant do not entitle him to a legal remedy.'" (quoting Lindsay v. United States, 295 F.3d at 1257)).

**Count I: Breach of Contract**

As indicated above, in Count I of Seneca's complaint, plaintiff alleges that the Army breached Contract No. W56JSR-20-C-0003 by deciding not to exercise Option Year 3 and Option Year 4 available under Contract No. W56JSR-20-C-0003. The question of breach of contract is one of contract interpretation. "Contract interpretation starts with the language of the contract." SUFI Network Servs., Inc. v. United States, 785 F.3d 585, 593 (Fed. Cir. 2015); see also Authentic Apparel Grp., LLC v. United States, 989 F.3d 1008, 1014 (Fed. Cir. 2021); Premier Off. Complex of Parma, LLC v. United States, 916 F.3d 1006, 1011 (Fed. Cir. 2019) (citing NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004)); Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 824 (Fed. Cir. 2010), cert. denied, 562 U.S. 1178 (2011); Bell/Heery v. United States, 739 F.3d at 1331; LAI Servs., Inc. v. Gates, 573 F.3d 1306, 1314 (Fed. Cir.), reh'g denied (Fed. Cir. 2009); Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375 (Fed. Cir. 2004); Foley Co. v. United States, 11 F.3d 1032, 1034 (Fed. Cir. 1993); Mostafa v. United States, 180 Fed. Cl. 480, 489 (2026) (quoting Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)); ASG Sols. Corp. v. United States, 170 Fed. Cl. 485, 496 (2024); Schneider Elec. Bldgs. Ams., Inc. v. United States, 163 Fed. Cl. 708, 721 (2023); Ascendant Servs., LLC v. United States, 160 Fed. Cl. 275, 286 (2022); HCIC Enters., LLC v. United States, 147 Fed. Cl. 118, 124 (2020); Nw. Title Agency, Inc. v. United States, 126 Fed. Cl. 55, 57-58 (2016) ("The starting point for any contract interpretation is the plain language of the agreement." (citing Foley Co. v. United States, 11 F.3d at 1034)), aff'd, 855 F.3d 1344 (Fed. Cir. 2017); Beard v. United States, 125 Fed. Cl. 148, 158 (2016); Eden Isle Marina, Inc. v. United States, 113 Fed. Cl. 372, 483-84 (2013). In

contract interpretation, the "'plain and unambiguous meaning of a written agreement controls.'" Causam Enters., Inc. v. Int'l Trade Comm'n, 155 F.4th 1338, 1344 (Fed. Cir. 2025) (quoting Hercules Inc. v. United States, 292 F.3d 1378, 1380-81 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002) (quoting Craft Mach. Works, Inc. v. United States, 926 F.2d 1110, 1113 (Fed. Cir. 1991))); see also Arko Exec. Servs., Inc. v. United States, 553 F.3d 1375, 1379 (Fed. Cir. 2009). "Terms must be given their plain meaning if the language of the contract is clear and unambiguous." SUFI Network Servs., Inc. v. United States, 785 F.3d at 593 (citing Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003)); see also Manitou Island Transit, LLC v. United States, 168 Fed. Cl. 218, 225 (2023); Gilead Scis., Inc. v. United States, 163 Fed. Cl. 104, 121 (2022); Canpro Invs. Ltd. v. United States, 130 Fed. Cl. 320, 347, recons. denied, 131 Fed. Cl. 528 (2017); Beard v. United States, 125 Fed. Cl. at 158 ("If the contract language is unambiguous, then it must be given its plain and ordinary meaning . . . ." (omission added)). The United States Court of Appeals for the Federal Circuit stated in Massie v. United States:

> In interpreting a contract, "[w]e begin with the plain language." "We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." In addition, "[w]e must interpret the contract in a manner that gives meaning to all of its provisions and makes sense."

Massie v. United States, 166 F.3d 1184, 1189 (Fed. Cir. 1999) (alterations in original) (quoting McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1996); and quoting Harris v. Dep't of Veterans Affs., 142 F.3d 1463, 1467 (Fed. Cir. 1998)); see also Lanclos v. United States, 40 F.4th 1352, 1355 (Fed. Cir. 2022); Coast Pro., Inc. v. United States, 828 F.3d 1349, 1354 (Fed. Cir. 2016); Shell Oil Co. v. United States, 751 F.3d 1282, 1305 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2014); McHugh v. DLT Sols., Inc., 618 F.3d 1375, 1380 (Fed. Cir. 2010); Giove v. DOT, 230 F.3d 1333, 1340-41 (Fed. Cir. 2000) ("In addition, we must interpret the contract in a manner that gives meaning to all of its provisions and makes sense. Further, business contracts must be construed with business sense, as they naturally would be understood by intelligent men of affairs." (citations omitted)); Jowett, Inc. v. United States, 234 F.3d 1365, 1368 (Fed. Cir. 2000) (quoting McAbee Constr., Inc. v. United States, 97 F.3d at 1435; and quoting Harris v. Dep't of Veterans Affs., 142 F.3d at 1467); Gould, Inc. v. United States, 935 F.2d at 1274 (indicating that a preferable interpretation of a contract is one that gives meaning to all parts of the contract rather than one that leaves a portion of the contract "useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result" (quoting Arizona v. United States, 216 Ct. Cl. 221, 575 F.2d 855, 863 (1978))). A Judge of the United States Court of Federal Claims has explained:

> "The words of a contract are deemed to have their ordinary meaning appropriate to the subject matter, unless a special or unusual meaning of a particular term or usage was intended, and was so understood by the parties." Lockheed Martin IR Imaging Sys., Inc. v. West, 108 F.3d 319, 322

> (Fed. Cir. 1997). "Under general rules of contract law we are to interpret provisions of a contract so as to make them consistent." Abraham v. Rockwell Int'l Corp., 326 F.3d 1242, 1251 (Fed. Cir. 2003). "[A]n agreement is not to be read in a way that places its provisions in conflict, when it is reasonable to read the provisions in harmony. . . . [T]he provisions must be read together in order to implement the substance and purpose of the entire agreement." Air-Sea Forwarders, Inc. v. United States, 166 F.3d 1170, 1172 (Fed. Cir. 1999). "A reasonable interpretation must assure that no contract provision is made inconsistent, superfluous, or redundant." Medlin Const. Grp., Ltd. v. Harvey, 449 F.3d 1195, 1200 (Fed. Cir. 2006) (internal quotation marks omitted).

Dynetics, Inc. v. United States, 121 Fed. Cl. 492, 512 (2015) (alterations and omission in original); see also ASG Sols. Corp. v. United States, 170 Fed. Cl. at 496; Gilead Scis., Inc. v. United States, 163 Fed. Cl. at 121; Elevated Techs., Inc. v. United States, 160 Fed. Cl. 257, 270 (2022); Ingham Reg. Med. Center v. United States, 163 Fed. Cl. 384, 399 (2022) ("The court 'must interpret the contract in a manner that gives meaning to all of its provisions and makes sense.'" (quoting Jowett, Inc. v. United States, 234 F.3d at 1368 (quoting McAbee Constr., Inc. v. United States, 97 F.3d at 1435))); Marquardt Co. v. United States, 101 Fed. Cl. 265, 268 (2011) ("In interpreting contractual language, the court must give reasonable meaning to all parts of the contract and avoid rendering portions of the contract meaningless." (citation omitted)).

In order "[t]o recover for a breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." Oliva v. United States, 961 F.3d 1359, 1362 (Fed. Cir. 2020) (alteration added); see also Boyd v. United States, 134 F.4th at 1352; San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir.), reh'g denied (Fed. Cir. 1989)); Gateway Dev. Comm'n v. United States, 180 Fed. Cl. 495, 511-12 (2026) (quoting San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d at 959); CENTECH Grp., Inc. v. United States, 175 Fed. Cl. 328, 339 (2025) (quoting San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d at 959); Gilead Scis., Inc. v. United States, 169 Fed. Cl. 210, 215 (2024) (quoting San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d at 959); Peanut Wagon, Inc. v. United States, 167 Fed. Cl. 577, 602 (2023) (quoting San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d at 959); Ingham Reg. Med. Center v. United States, 163 Fed. Cl. at 397 (citing San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d at 959); Sunrez Corp. v. United States, 157 Fed. Cl. 640, 649 (2022); Hous. Auth. of Slidell v. United States, 149 Fed. Cl. 614, 626 (2020); Shell Oil Co. v. United States, 130 Fed. Cl. 8, 34 (2017) (quoting San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d at 959), aff'd, 896 F.3d 1299 (Fed. Cir. 2018). "'The plaintiff or party alleging the breach has the burden of proof on all of its breach of contract claims.'" Stockton E. Water Dist. v. United States, 583 F.3d 1344, 1360 (Fed. Cir. 2009) (quoting 23 RICHARD A. LORD, WILLISTON ON CONTRACTS § 63:14 (4th ed. 1999)), reh'g granted in part, 638 F.3d 781 (Fed. Cir. 2011); see also Beard v. United States, 125 Fed. Cl. at 157 ("To prevail on a breach-of-contract claim, the plaintiff bears the burden of proving: (1) the existence of a valid contract between the parties; (2) a duty arising from the contract; (3) a breach in duty; and (4) damages caused by the

breach." (internal quotation marks and citations omitted)); Gilead Scis., Inc. v. United States, 169 Fed. Cl. at 215 ("As the plaintiff, Gilead bears the burden of proving each element." (citing Beard v. United States, 125 Fed. Cl. at 157)).

For a valid contract to come into existence, a person with authority to bind the government must also accept the contract. See Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947); see also Ravi v. United States, 104 F.4th 1359, 1369 (Fed. Cir. 2024); Liberty Ammunition, Inc. v. United States, 835 F.3d 1388, 1401 (Fed. Cir. 2016) ("A Government agent must have actual authority to bind the Government to a contract." (citing Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997))). In the government procurement context, contracts, and modifications thereto, may be entered into only by contracting officers. See 48 C.F.R. § 1.601 (2020) ("Contracts may be entered into and signed on behalf of the Government only by contracting officers."); see also Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1260-61 (Fed. Cir. 2005) ("A contracting officer is a government agent vested with the authority to enter into and sign contracts on behalf of the government . . . . Given that authority, the contracting officer also has the additional authority to modify contracts." (omission added) (citing 48 C.F.R. § 1.601; and Gene Peters v. United States, 694 F.2d 687, 693 (Fed. Cir. 1982))).

Neither party challenges that there existed a valid contract between Seneca and defendant, which was Contract No. W56JSR-20-C-0003 executed on May 31, 2020. As indicated above, in order to support its claims currently before the court that defendant breached Contract No. W56JSR-20-C-0003, plaintiff argues that the Payment Addendum section of Seneca's Price Quote was incorporated into Contract No. W56JSR-20-C-0003 by reference and that the Army breached Contract No. W56JSR-20-C-0003 when defendant decided not to exercise Option Year 3 and Option Year 4. As also indicated above, defendant disagrees with plaintiff that the Payment Addendum section of Seneca's Price Quote was incorporated into Contract No. W56JSR-20-C-0003 by reference, as alleged by plaintiff. As discussed below, the various documents which constituted part of Contract No. W56JSR-20-C-0003 are at least: (1) the Standard Form 1449 executed by the parties on May 31, 2020, (2) Attachment 0001 to the Standard Form 1449, which included the Exhibit A "End User Ordering Document" and the Exhibit A-1 "Oracle Federal Master Agreement General Terms" from Seneca's Price Quote, (3) Modification P00001, which was issued by Contracting Officer Newberg on June 3, 2020, and which incorporated the Notice of Assignment as Attachment 0002 to Contract No. W56JSR-20-C-0003 and the Instrument of Assignment as Attachment 0003 to Contract No. W56JSR-20-C-0003, and (4) the other post-contracting modifications, including Modifications P00002 through P00009. In the following discussion, the court refers to the documents enumerated immediately above, collectively, as "the Contract," in order to analyze whether the Payment Addendum section of Seneca's Price Quote also was incorporated into the Contract by reference.

In its complaint, Seneca argues that the Payment Addendum section of Seneca's Price Quote was "incorporated into the Contract by mutual agreement with the contracting officer," and, therefore, that the Army had a duty "to renew the Contract in Option Years 3 and 4." Specifically, Seneca identifies the source of defendant's alleged duty to exercise

the remaining options, Option Year 3 and Option Year 4, as the "Non-appropriation, Renewal, Termination" term included in the Payment Addendum section of Seneca's Price Quote, which, as discussed above, stated, in full:

> The Government has the option to renew the Order for subsequent fiscal years beyond the initial fiscal year. Any renewal(s) shall be on the same terms and conditions of the initial Order. The Government agrees to use its best efforts to obtain funds for each renewal option. The Government may elect not to renew the order at the end of any base or option period only if adequate funds have not been made available to the Government in an amount sufficient to continue to make the payment amounts. If the Government determines that funds are available on another contract vehicle to cover the same or similar licenses as are covered by this order and choose [sic] to obtain or retain the licenses under that contract vehicle, the Government shall be deemed to have had available funds for renewals under this order and shall only be relieved of its responsibilities under this order with the written consent of contractor.
>
> The Government's contracting officer may terminate the order for convenience pursuant to FAR 52.212-4(l). In the event of a stop work order and resulting termination for convenience, the contractor will be entitled to payment of all amounts due to the actual termination for convenience date, after which it will recover the unamortized payments, discounted at equivalent U.S. Treasury (H.15) T-bill rates as of the date of the initial delivery order, as a termination for convenience payment. If the stop work order does not lead to a termination for convenience, all payments shall be due as if there had been no stop work order.
>
> The rights to use the system granted hereunder are priced and provided as a single asset, and therefore, the right of the Government to terminate or non-renew applies to the entire order and does not allow partial terminations or renewals. If the Government elects not to exercise its option to renew or terminates the order for convenience or non-appropriation, but expends funds to pay for products, software, and/or services that perform the functions which the system was procured to perform, then the Government will be deemed to have had funds available.
>
> The Government will promptly notify the contractor of any termination or non-renewal. Upon such notification, the order will terminate at the end of the last fiscal year for which funds were appropriated and the Government shall provide contractor and/or its assignee written certification that it is no longer using the software.

(alteration added).

Seneca alleges in its complaint that "[t]he Army had appropriated funds available to support the Contract, including Option Years 3 and 4," and, further, that "[u]pon

information and belief, the Government is acquiring or has acquired other software to perform the functions of the [Oracle] Software and expending funds to do so, demonstrating that the Army had funds available to extend the Contract in Option Years 3 and 4." (alterations added).[26] Seneca also alleges that "[t]he Army inquired both about acquiring additional Oracle licenses after non-renewal of the Contract and about restoring Support for the license, which shows there was, in fact, a continuing need for the [Oracle] Software under the Contract." (alterations added). Seneca, therefore, argues that the Army's decision not to exercise Option Year 3 and Option Year 4 "was a breach of the Contract because lack of available funds was the only circumstance allowing the Government not to exercise the renewal options." As quoted above, Seneca argues that the Payment Addendum section of Seneca's Price Quote was "incorporated into the Contract by mutual agreement with the contracting officer," and, therefore, that the Army had a duty "to renew the Contract in Option Years 3 and 4."

In its motion to dismiss, defendant argues that Count I of plaintiff's complaint, like Count II and Count III of plaintiff's complaint discussed below, is "premised on the assumption that the Contract imposed on the Government a duty to procure Oracle software from Seneca during all four option years." According to defendant, however, "[t]he parties did not incorporate any such obligation [to exercise all four option years] into the Contract, and, even if they had, the obligation would have been contrary to law and therefore unenforceable." (alterations added). Defendant argues that the Payment Addendum section of Seneca's Price Quote was not incorporated into the Contract because "[t]he Contract does not mention, let alone expressly incorporate, Seneca's Proposal or the Payment Addendum contained therein." (alteration added).

As recently stated by the United States Court of Appeals for the Federal Circuit, "'[i]ncorporation by reference provides a method for integrating material from various documents into a host document . . . by citing such material in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein.'" Beacon Point Assocs. LLC v. Dep't of Veterans Affs., 139 F.4th at 1309 (alteration added; omission in original) (quoting CSI Aviation, Inc. v. Dep't of Homeland Sec., 31 F.4th 1349, 1355 (Fed. Cir. 2022)); see also Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d 1339, 1343-44 (Fed. Cir. 2008); St. Christopher Assocs., L.P. v. United States, 511 F.3d 1376, 1384 (Fed. Cir. 2008) ("This court has been reluctant to find that statutory or regulatory provisions are incorporated into a contract with the government unless the contract explicitly provides for their incorporation." (citing Smithson v. United States, 847 F.2d 791, 794 (Fed. Cir. 1988))); Sys. Implementers, Inc.

[26] In its complaint, plaintiff also suggests, without identifying a specific term of the Contract, that "substituting other software when the Army had a bona fide need for the [Oracle] Software was an independent breach of Contract." (alteration added). During the initial status conference in the above captioned case, however, plaintiff's counsel stated that plaintiff was not asserting that the substitution of other software was an independent breach of contract. Defendant does not address this allegation in its motion to dismiss, and neither party further briefed the issue nor addressed whether plaintiff alleged an independent breach of contract in this regard at oral argument.

v. United States, 162 Fed. Cl. 754, 765-66 (2022) ("Incorporation by reference integrates material from other documents into a 'host document' by clearly citing that material so they effectively become part of the host document." (quoting CSI Aviation, Inc. v. Dep't of Homeland Sec., 31 F.4th at 1355)); Leeward Constr., Inc. v. United States, 160 Fed. Cl. 446, 455 (2022); Raytheon Co. v. United States, 160 Fed. Cl. 428, 441 (2022). In order to incorporate extrinsic material into a contract by reference, "the incorporating contract must use language that is express and clear, so as to leave no ambiguity about the identity of the document being referenced, nor any reasonable doubt about the fact that the referenced document is being incorporated into the contract." Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1344 (emphasis in original); see also Beacon Point Assocs. LLC v. Dep't of Veterans Affs., 139 F.4th at 1309; CSI Aviation, Inc. v. Dep't of Homeland Sec., 31 F.4th at 1355; Precision Pine & Timber, Inc. v. United States, 596 F.3d at 826 ("To incorporate material by reference, a contract must use clear and express language of incorporation, which unambiguously communicates that the purpose is to incorporate the referenced material, rather than merely acknowledge that the referenced material is relevant to the contract." (citing Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1344-45)); Gov't Acquisitions, Inc. v. United States, No. 25-107, 2026 WL 2264123, at *5 (Fed. Cl. Aug. 4, 2026); Silver State Land LLC v. United States, 148 Fed. Cl. 217, 243 (2020); Peterson Indus. Depot, Inc. v. United States, 140 Fed. Cl. 485, 491 (2018); Pub. Hous. Authorities Directors Ass'n v. United States, 130 Fed. Cl. 522, 532 (2017); IBM Corp. v. United States, 119 Fed. Cl. 145, 154 (2014). Moreover, "a 'mere reference to another [document] is not an incorporation of anything therein.'" Beacon Point Assocs. LLC v. Dep't of Veterans Affs., 139 F.4th at 1310 (alteration in original) (quoting Callaway Golf Co. v. Acushnet Co., 576 F.3d 1331, 1346 (Fed. Cir. 2009)); see also CSI Aviation, Inc. v. Dep't of Homeland Sec., 31 F.4th at 1355 (citing Callaway Golf Co. v. Acushnet Co., 576 F.3d at 1346); Sys. Implementers, Inc. v. United States, 162 Fed. Cl. at 766; Leeward Constr., Inc. v. United States, 160 Fed. Cl. at 455. The United States Court of Appeals for the Federal Circuit also has stated that although no "'magic words' of reference or of incorporation" are required to incorporate extrinsic material into a contract by reference,

> parties contracting with the government may easily avoid or at least minimize the risk of having to litigate this issue by simply adopting widely-used and judicially-approved language of incorporation, such as "is hereby incorporated by reference" or "is hereby incorporated as though fully set forth herein," and by including specific and sufficient information identifying a particular document, such as the title, date, parties to, and section headings of any document to be incorporated.

Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1346; see also CSI Aviation, Inc. v. Dep't of Homeland Sec., 31 F.4th at 1356; Sys. Implementers, Inc. v. United States, 162 Fed. Cl. at 766; Leeward Constr., Inc. v. United States, 160 Fed. Cl. at 455; Silver State Land LLC v. United States, 148 Fed. Cl. at 240-41; Peterson Indus. Depot, Inc. v. United States, 140 Fed. Cl. at 492. In sum, the United States Court of Appeals for the Federal Circuit has stated:

> Taken together, these cases support a principle in our Circuit that the language used in a contract to incorporate extrinsic material by reference must explicitly, or at least precisely, identify the written material being incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract (rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as background law or negotiating history).

Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1345; see also Beacon Point Assocs. LLC v. Dep't of Veterans Affs., 139 F.4th at 1309 ("Thus, to incorporate extrinsic material by reference, a contract (1) 'must explicitly, or at least precisely, identify the written material being incorporated and [(2)] must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract.'" (alteration in original) (quoting Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1345)); CSI Aviation, Inc. v. Dep't of Homeland Sec., 31 F.4th at 1355.

In the case currently before the court, Seneca disagrees with defendant on what documents should be considered part of the Contract and Seneca alleges that the Payment Addendum section of Seneca's Price Quote was incorporated into the Contract by reference based on language in (1) Seneca's Price Quote, (2) the May 2020 emails exchanged between Seneca and Contracting Officer Newberg prior to execution of the Contract on May 31, 2020, (3) the Notice of Assignment issued by Contracting Officer Newberg on June 1, 2020, and (4) the Certificate of Acceptance issued by Ms. Stock, the Army's then Chief Engineer, on June 23, 2020. Specifically, Seneca alleges that its Price Quote "specified in writing that the Payment Terms 'shall be deemed incorporated into the schedule of supplies/services for purposes of FAR 52.212-4, paragraph (s), item (1),' relating to Order of Precedence." Seneca also alleges that "[i]n e-mail correspondence submitting the Proposal on May 11, 2020, Seneca explicitly specified in writing that the Proposal incorporated a 'Payment Addendum' reflecting supplemental terms and conditions in support of the payment plan, a payment schedule, and two Oracle Exhibits." (alteration added). Seneca further alleges that "[o]n May 28, 2020, Mr. Newberg invited comments on the draft contract," (alteration added), and that, in response, Seneca requested Contracting Officer Newberg to

> [p]lease incorporate this sentence **in BOX 20 of the SF 1449** **"Seneca Global Services, LLC proposal dated May 11, 2020 – REV 1, offered in response to Solicitation W56JSR-20-R-0011, is hereby incorporated into this award in its entirety by reference, together with Exhibit A "End User Ordering Document" and Exhibit A-1 "Oracle Federal Master Agreement General Terms".**

(capitalization and emphasis in original; alteration added). Moreover, Seneca alleges that "[o]n May 29, 2020, Seneca again requested confirmation that" Seneca's Price Quote "was incorporated into the award in its entirety," (alteration added), to which "Mr. Newberg responded on behalf of the Army that this '[was] the government's intent' and that, combined with the Standard Form 1449 contract that Mr. Newberg had prepared, '[t]he

Four documents together can be considered the contract.'" (alterations and capitalization in original). Furthermore, Seneca alleges that "the Payment Terms were plainly referenced and incorporated into the Contract as the Notice of Assignment and Certificate of Acceptance both explicitly referenced the four documents which the Contracting Officer confirmed are to be considered part of the Contract."

In its motion to dismiss, defendant cites to the United States Court of Appeals for the Federal Circuit's decision in Northrop Grumman Information Technology, Inc. v. United States, 535 F.3d at 1344, to argue that:

> The Contract fails both aspects of the Northrop Grumman test. It does not "explicitly" or "precisely" identify the Proposal or any provision contained therein; in fact, the Contract does not mention Seneca's Proposal at all. Nor does the Contract use any language of incorporation that might suggest, let alone "clearly communicate," that the Proposal or any aspect of it had been incorporated by reference. Nothing in the Contract provides the level of clarity necessary to eliminate all "ambiguity" and "reasonable doubt" about the parties' intent to incorporate the Proposal, as Northrop Grumman requires.

(internal citations omitted).[27]

In the above captioned case, on May 31, 2020, the parties executed Standard Form 1449, which was signed by Mr. Jesinksy on behalf of Seneca and signed by Contracting Officer Newberg on behalf of the government. Neither party disputes that the signed Standard Form 1449 was included in Contract No. W56JSR-20-C-0003 in plaintiff's case. Upon review of the Standard Form 1449 executed by the parties, the court finds that the Standard Form 1449 executed by the parties did not contain a single reference to Seneca's Price Quote or to the Payment Addendum section of Seneca's Price Quote. Although Seneca states that it had requested Contracting Officer Newberg to include a statement in block 20 of the Standard Form 1449 stating that Seneca's Price Quote was "incorporated into this award in its entirety by reference," Contracting Officer Newberg did not include any such language in the Standard Form 1449 executed by both parties, whether in block 20 of the Standard Form 1449 or elsewhere on the Standard

---

[27] As indicated above, in Northrop Grumman Information Technology, Inc. v. United States, 535 F.3d 1339, the United States Court of Appeals for the Federal Circuit held:

> the language used in a contract to incorporate extrinsic material by reference must explicitly, or at least precisely, identify the written material being incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract (rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as background law or negotiating history).

Id. at 1345.

Form 1449. Moreover, block 29 of the Standard Form 1449 executed by the parties, which is sometimes used to reference the awardee's offer and to identify which items, if any, from the awardee's offer have been accepted by the government, was left blank upon contract execution by both parties. See Beacon Point Assocs. LLC. v. Dep't of Veterans Affs., 139 F.4th at 1308; see also IBM Corp. v. United States, 119 Fed. Cl. at 151 (noting that block 29 of Standard Form 1449 "provides a blank space to fill in the date of the offer" and "also contains a blank space for an agency to list contract provisions it accepts"). Furthermore, unlike the Exhibit A "End User Ordering Document" and the Exhibit A-1 "Oracle Federal Master Agreement General Terms" attached to Seneca's Price Quote, which were incorporated into the Standard Form 1449 executed by the parties as "Attachment 0001," neither Seneca's Price Quote, nor the Payment Addendum section of Seneca's Price Quote, were incorporated as attachments to the Standard Form 1449 executed by both parties. Given that the Standard Form 1449 did not "explicitly, or at least precisely, identify," see Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1345, either Seneca's Price Quote, or the Payment Addendum section of Seneca's Price Quote, the Standard Form 1449 did not incorporate the Payment Addendum section of Seneca's Price Quote into the Contract by reference.

Seneca appears to acknowledge that the Standard Form 1449 executed by the parties did not contain a single reference to Seneca's Price Quote or to the Payment Addendum section of Seneca's Price Quote, as Seneca does not allege in its complaint, nor does Seneca further allege, that the Standard Form 1449 itself incorporated the Payment Addendum section of Seneca's Price Quote into the Contract by reference. Instead, as indicated above, Seneca tries to rely on language in (1) Seneca's Price Quote, (2) the May 2020 emails exchanged between Seneca and Contracting Officer Newberg prior to the execution of the Contract on May 31, 2020, (3) the Notice of Assignment issued by Contracting Officer Newberg on June 1, 2020, and (4) the Certificate of Acceptance issued by Ms. Stock, the Army's then Chief Engineer, on June 23, 2020, to argue that the Payment Addendum section of Seneca's Price Quote was incorporated into the Contract by reference. None of these documents or communications enumerated immediately above were sufficient to incorporate Seneca's Price Quote or the Payment Addendum section of Seneca's Price Quote into the Contract by reference.

With respect to the Notice of Assignment, as discussed above, on June 3, 2020, Contracting Officer Newberg issued Modification P00001 to the Contract on Standard Form 30. Modification P00001 stated:

> The purpose of this modification is to assign payments from Seneca Global Serv ices [sic] ,, [sic] LLC . . . to Wilmington Trust National Associations [sic] . . . . The attached Notice of Assignment and Instrument of Assignment in accordance with FAR 52.232-23 Assignment of Claims is herby [sic] incorporated into this contract.

(alterations and omissions added). The Notice of Assignment, therefore, was made part of the Contract through Modification P00001. The Notice of Assignment stated, in relevant part:

> This has reference to Solicitation/Contract/Order for Commercial Items Contract No. W56JSR-20-C-0003 effective May 31, 2020, including Solicitation W56JSR-20-R-0011 Price Quote – REV 1 submitted by Seneca Global Services, LLC on May 11, 2020, and EXHIBIT A End User Ordering Document and EXHIBIT A-1 Oracle Federal Master Agreement General Terms thereto and all subsequent amendments, modifications, renewals, attachments, and supplements thereto, and any additional delivery orders in connection with the exercise by the Government of the options described therein, entered into between Seneca Global Services, LLC . . . and ACC-APG [Army Contracting Command – Aberdeen Proving Ground] Division E . . . for the lease of Oracle software.
>
> Monies due or to become due under the contract described above have been assigned to the undersigned under the provisions of the Assignment of Claims Act of 1940, as amended (31 U.S.C. § 3727, 41 U.S.C. § 6305).
>
> A true copy of the Instrument of Assignment executed by the Contractor on June 1, 2020 is attached to the original notice.
>
> Payment(s) due or to become due under this contract should be made to the undersigned assignee.

(alterations, emphasis, and omissions added; capitalization in original).

Neither the language in Modification P00001, nor the language in the Notice of Assignment, which, as quoted above, stated only that the Notice of Assignment "has reference to Solicitation/Contract/Order for Commercial Items Contract No. W56JSR-20-C-0003 . . . including Solicitation W56JSR-20-R-0011 Price Quote – REV 1 submitted by Seneca Global Services, LLC . . ." (omissions added), was sufficient to incorporate Seneca's Price Quote or the Payment Addendum section of Seneca's Price Quote into the Contract by reference. Modification P00001 did not reference either Seneca's Price Quote or the Payment Addendum section of Seneca's Price Quote. Rather, Modification P00001 explicitly stated that its "purpose" was "to assign payments from" Seneca to Wilmington Trust, National Association. There was no reference in Modification P00001 indicating that its purpose was to incorporate the Payment Addendum section of Seneca's Price Quote into the Contract. Moreover, although the Notice of Assignment referenced the Contract at issue in this case and referenced the Seneca "Price Quote – REV 1 submitted by Seneca Global Services, LLC on May 11, 2020," the Notice of Assignment did not clearly communicate that the purpose of the reference should be considered to incorporate the referenced material into the underlying contract between Seneca and the government. See Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1345. Furthermore, nothing in the Notice of Assignment's passing reference to Seneca's Price Quote pointed specifically to the Payment Addendum section of Seneca's Price Quote as applicable terms and conditions that should govern the parties' obligations under the Contract. See Silver State Land LLC v. United States, 148 Fed. Cl. at 241 ("[T]he NORA

[Notice of Realty Action] does not 'clearly communicate that the purpose of the reference' to 43 U.S.C. § 1713 'is to incorporate the referenced material into [a resulting] contract.' And there is nothing whatsoever in the NORA's passing reference to 43 U.S.C. § 1713 pointing specifically to § 1713(f) as an 'applicable term' that might govern the parties' future performance obligations under the contract." (first and second alteration added; third alteration in original; citation omitted)). Instead, the Notice of Assignment in the case currently under review merely stated that it "has reference to" the Contract and Seneca's "Price Quote – REV 1," and the United States Court of Appeals for the Federal Circuit has held that "a 'mere reference to another [document] is not an incorporation of anything therein.'" Beacon Point Assocs. LLC v. Dep't of Veterans Affs., 139 F.4th at 1310 (alteration in original) (quoting Callaway Golf Co. v. Acushnet Co., 576 F.3d at 1346); see also Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1345 (stating that the language "must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract (rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as background law or negotiating history)"). Thus, neither the language of Modification P00001, nor the language of the Notice of Assignment, which was incorporated into the Contract by Modification P00001, incorporated the Payment Addendum section of Seneca's Price Quote into the Contract by reference.[28]

[28] With respect to the Notice of Assignment, the court notes that during the oral argument in the above captioned case, defendant's counsel had the following exchange with the court regarding Seneca's assignment of contract payments to a third party:

> THE COURT: So the Army paid the bank and not Seneca. Does that have an impact here even after the receipt of the notice?
>
> MR. KUSHNIR: It does not have an impact on the arguments we are presenting to the Court. It may have an impact on some other issues, for instance, if there's an Anti-Assignment Act issue, but those are not issues we've raised in our motion to dismiss. I figured the Court probably sees those kinds of issues as possibilities down the line but only if they [Seneca] can overcome our motion to dismiss.

(alteration added). The court also notes that, in Northrop Grumman Computing Systems, Inc. v. United States, 823 F.3d 1364, 1368 (Fed. Cir. 2016), the United States Court of Appeals for the Federal Circuit held that a software reseller, which had assigned contract payments to a third party financing company in exchange for a lump sum payment, including the software reseller's anticipated profit, from that third-party financing company, could not prove damages for breach of contract based on the government's failure to exercise an option year. See id. ("[T]he undisputed facts are that Northrop's financial position is equal to what it expected to profit had the Government exercised all the option years . . . . Northrop is in at least as good, if not better, a position as it expected when it assigned the Delivery Order payments, and it has not shown any particular harm to itself flowing from the alleged breach." (alteration and omission added)). In the case currently before the court, however, the court need not reach this issue related to the assignment

As indicated above, Seneca also alleges that the Certificate of Acceptance issued on June 23, 2020 by Ms. Stock, the then Chief Engineer for the Army, incorporated the Payment Addendum section of Seneca's Price Quote into the Contract by reference. The Certificate of Acceptance was not incorporated into the Contract by reference because it was not identified in, or attached to, the Standard Form 1449 executed by the parties on May 31, 2020, and the Certificate of Acceptance also was not identified in any of the attachments to Standard Form 1449. Unlike the Notice of Assignment discussed above, the Certificate of Acceptance, signed by Ms. Stock, the then Chief Engineer for the Army, was not ever incorporated into the Contract by a modification issued by a Contracting Officer. Based on the record before the court, Contracting Officer Newberg did not issue a Standard Form 30, "Amendment of Solicitation/Modification of Contract," to modify the Contract to incorporate the Certificate of Acceptance. The only signatory to the Certificate of Acceptance was Ms. Stock, who was not identified by either party as having contracting authority to enter into modifications on behalf of the government. See 48 C.F.R. § 1.601 ("Contracts may be entered into and signed on behalf of the Government only by contracting officers."); see also Flexfab, L.L.C. v. United States, 424 F.3d at 1260-61 ("A contracting officer is a government agent vested with the authority to enter into and sign contracts on behalf of the government . . . . Given that authority, the contracting officer also has the additional authority to modify contracts." (omission added) (citing 48 C.F.R. § 1.601; and Gene Peters v. United States, 694 F.2d at 693)). Therefore, the Certificate of Acceptance is an extra-contractual document signed by Ms. Stock, which cannot have served to incorporate the Payment Addendum section of Seneca's Price Quote into the Contract by reference. See Gov't Acquisitions, Inc. v. United States, 2026 WL 2264123, at *7 (finding that a similar "Certificate of Acceptance," which stated that it was "related to" the contract and proposal at issue in Government Acquisitions, did not incorporate the contractor's proposed terms into the contract by reference because "the Certificate of Acceptance is not part of the Contract—the Certificate merely confirms the Navy's receipt of goods from plaintiff and was created after the software was delivered in performance of the Contract" (emphasis in original)). In order to incorporate extrinsic material into a contract by reference, a contractual document, rather than some extra-contractual document or statement like the Certificate of Acceptance, must have explicitly and precisely identified the extrinsic material to be incorporated. See Beacon Point Assocs. LLC v. Dep't of Veterans Affs., 139 F.4th at 1310 ("If Beacon Point intended to vary the terms of these FAR clauses by incorporating its Quote's terms and conditions into the contract, it should have ensured that the contract expressly identified that the Quote's terms and conditions were incorporated into the contract."); see also Precision Pine & Timber, Inc. v. United States, 596 F.3d at 826 ("To incorporate material by reference, a contract must use clear and express language of incorporation."); Callaway Golf Co. v. Acushnet Co., 576 F.3d at 1346 ("To incorporate matter by reference, a host document must contain language 'clearly identifying the subject matter which is incorporated and where it is to be found.'" (quoting In re De Seversky, 474 F.2d 671, 674 (C.C.P.A. 1973));

---

of contract receivables to a third party and Seneca's ability to recover damages for defendant's failure to exercise Option Year 3 and Option Year 4 because, as discussed below, plaintiff's complaint fails to state a claim upon which relief can be granted.

Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1344 ("[T]he incorporating contract must use language that is express and clear, so as to leave no ambiguity about the identity of the document being referenced, nor any reasonable doubt about the fact that the referenced document is being incorporated into the contract." (alteration added; emphasis in original)).

Furthermore, the Certificate of Acceptance in and of itself also did not contain sufficient, express language to incorporate the Payment Addendum section of Seneca's Price Quote into the Contract by reference. The Certificate of Acceptance stated, in full:

> Certificate of Acceptance related to: Solicitation/Contract/Order for Commercial Items Contract No. W56JSR-20-C-0003 effective May 31, 2020, issued by ACC-APG Division E to Seneca Global Services, LLC ("**Contractor**") for use by the US Army Distributed Common Ground System ("**User**"), including Solicitation: W56JSR-20-R-0011 Price Quote – REV 1 submitted by Seneca Global Services, LLC on May 11, 2020 and EXHIBIT A End User Ordering Document and EXHIBIT A-1 Oracle Federal Master Agreement General Terms thereto, and all subsequent amendments, modifications, renewals, attachments and supplements thereto and any additional delivery orders in connection with the exercise by the User of the options described therein (collectively, the "**Order**")
>
> 1. Software: The User hereby certifies that the Software set forth in the Order has been delivered to the User, inspected by the User, found to be in good order and accepted, all on the Date of Acceptance set forth below:
>
> Date of Acceptance: 3 JUNE 2020
>
> 2. Representations by the User: The User hereby represents and warrants to the Contractor and its assignee that one the Date of Acceptance set forth above:
>
> (a) the representations and warranties of the User set forth in the Order are true and correct in all material respects as though made on and as of such Date of Acceptance; (b) the User has satisfied or complied with all requirements set forth in the Order to be satisfied or complied with on or prior to such Date of Acceptance; (c) no Default or Event of Default under the Order has occurred and is continuing on such Date of Acceptance; and (d) the Software is insured in accordance with the Order.

(capitalization and emphasis in original). Similar to the Notice of Assignment discussed above, the language in the Certificate of Acceptance quoted immediately above did not incorporate the Payment Addendum section of Seneca's Price Quote into the Contract by adding a clear statement of incorporation because the Certificate of Acceptance merely states that it is "related to" the "Price Quote – REV 1, submitted by Seneca Global Services, LLC on May 11, 2020," (capitalization in original), without clearly communicating

that the purpose of words in the Certificate of Acceptance was to incorporate Seneca's Price Quote or the Payment Addendum section of Seneca's Price Quote into the Contract. See Gov't Acquisitions, Inc. v. United States, 2026 WL 2264123, at *7; see also Beacon Point Assocs. LLC v. Dep't of Veterans Affs., 139 F.4th at 1310; Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1345. The Certificate of Acceptance suggests its purpose was to certify the Army's acceptance of the Oracle Software delivered under the Contract with Seneca in the base year, rather than to incorporate any extrinsic material into the Contract between Seneca and defendant. Accordingly, the Certificate of Acceptance did not incorporate the Payment Addendum section of Seneca's Price Quote into the Contract by reference.

Next, Seneca alleges that the Payment Addendum section of Seneca's Price Quote was incorporated into the Contract by reference based on language in Seneca's Price Quote. Plaintiff argues in its complaint that the Payment Addendum section of Seneca's Price Quote was incorporated into the Contract because the Price Quote submitted by Seneca "specified in writing that the Payment Terms 'shall be deemed incorporated into the schedule of supplies/services for purposes of FAR 52.212-4, paragraph (s), item (1),' relating to Order of Precedence." In support, plaintiff argues that the case currently under review is like CSI Aviation, Inc. v. Department of Homeland Security, 31 F.4th 1349, in which the United States Court of Appeals for the Federal Circuit determined that a contractor's terms and conditions were incorporated by reference into a Standard Form 1449 contract with a government agency based on language contained in the contractor's offer. See id. at 1350. In CSI Aviation, Inc. v. Department of Homeland Security, a contractor, CSI Aviation, Inc. (CSI), submitted an offer, which included a commercial price list and CSI's Terms and Conditions, in response to a General Services Administration (GSA) solicitation for Travel Services Solutions. See id. at 1351. Upon receipt of CSI's offer, the GSA contracting officer informed CSI that he would have to submit CSI's Terms and Conditions for legal review. See id. The GSA contracting officer determined that CSI's offer was "acceptable to the Government" and "instructed CSI to review a document that would 'become the attachment to the signed cover page [Standard Form] 1449' and to 'confirm that this accurately and completely addresse[d] all elements of the contract to be awarded that may not be directly addressed within the information submitted and/or agreed upon." Id. (alterations in original). According to the United States Court of Appeals for the Federal Circuit in CSI Aviation, CSI "returned 'the final documents [the parties] ha[d] agreed to,' including the SF1449 attachment, a final proposal letter, and the Revised Commercial Price List, all of which CSI dated March 9, 2009 to reflect the final review date." Id. at 1351-52. (alterations and capitalization in original). The GSA subsequently "awarded the Schedule Contract to CSI," which included:

> [T]he signed SF1449 and attached pages, together with the following documents, among others, listed in the SF1449 as being expressly "incorporated and made a part of the contract": 1) the Travel Services Solutions schedule solicitation "dated February 10, 2009, superseding the former solicitation"; 2) the Offer; and 3) the Revised Commercial Price List.

Id. at 1352 (alteration added; internal references omitted). During performance of a task order under the Schedule Contract, a dispute arose between CSI and the GSA regarding whether CSI's Terms and Conditions, which were included in CSI's offer, were incorporated into the Schedule Contract by reference. See id. at 1353.

The dispute ultimately reached the United States Court of Appeals for the Federal Circuit on appeal after a Civilian Board of Contract Appeals' decision. See id. at 1354. On appeal, the United States Court of Appeals for the Federal Circuit stated:

> [T]he Schedule Contract incorporates the Offer submitted by CSI during contract negotiations. Neither party disputes that this document [the Offer] was "made a part of the contract." Rather, they disagree as to whether the Offer uses sufficient language to incorporate the CSI Terms and Conditions into the Schedule Contract by reference. We conclude that it does.

Id. at 1355 (alterations added; internal citation omitted). The United States Court of Appeals for the Federal Circuit held:

> The Offer expressly identifies the document titled "CSI Terms and Conditions" and unambiguously states that such document will apply to all operations. The Offer's incorporation language, found in its Pricing Policy's "Terms and Conditions" provision, refers to the "CSI Terms and Conditions" document that was also included as part of the Offer.
>
> Because the Schedule Contract, through the incorporated Offer, unambiguously identifies the CSI Terms and Conditions and specifies that such terms and conditions will apply to all operations, we hold that the Schedule Contract incorporates the CSI Terms and Conditions by reference.

Id. at 1357 (capitalization in original).

In Seneca's case currently before the court, plaintiff alleges that the Payment Addendum section of Seneca's Price Quote likewise was "plainly (and intentionally) incorporated into the Contract" because, "[l]ike CSI, Seneca's Payment Terms were plainly spelled out in its Proposal, which Seneca made clear to the Army through contract negotiations are to be 'incorporated into this award in its entirety by reference . . .'." (alteration added; omission in original). As indicated above, it is correct that the Payment Addendum section of Seneca's Price Quote explicitly indicated that "these payment terms shall be deemed incorporated into the schedule of supplies/services for purposes of FAR 52.212-4, paragraph (s), item (1)." But unlike in the CSI Aviation case, in which the Standard Form 1449 at issue explicitly incorporated CSI's offer by reference, and neither CSI nor the GSA disputed that CSI's offer was "made part of the contract," see CSI Aviation, Inc. v. Dep't of Homeland Sec., 31 F.4th at 1355, in Seneca's case, as discussed above, Seneca's Price Quote was not incorporated into the Contract by the Standard Form 1449 executed by the parties, and the parties dispute whether Seneca's Price Quote

was made part of the Contract. Although Contracting Officer Newberg indicated to plaintiff his "intent" to consider incorporating Seneca's Price Quote into the Contract, Contracting Officer Newberg also indicated the remaining need to consult with his legal department first before incorporating Seneca's proposed terms and, ultimately, the Standard Form 1449 executed by the parties in plaintiff's case did not contain a single reference to Seneca's Price Quote or to the Payment Addendum section of Seneca's Price Quote. Therefore, the CSI Aviation case does not assist Seneca's arguments regarding incorporation of the Payment Addendum section of Seneca's Price Quote into the Contract between plaintiff and defendant. Seneca's Price Quote remained an extra-contractual document and cannot have served to incorporate the Payment Addendum section of Seneca's Price Quote into the Contract by reference. See, e.g., Beacon Point Assocs. LLC v. Dep't of Veterans Affs., 139 F.4th at 1310; Precision Pine & Timber, Inc. v. United States, 596 F.3d at 826; Callaway Golf Co. v. Acushnet Co., 576 F.3d at 1346; Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1344.

Aside from reliance on the CSI Aviation case discussed above, Seneca also alleges that the Payment Addendum section of Seneca's Price Quote was independently incorporated into the Contract based on the May 2020 emails exchanged between Seneca and Contracting Officer Newberg prior to the execution of the Standard Form 1449 on May 31, 2020. Seneca alleges in its complaint that "[i]n e-mail correspondence submitting the Proposal on May 11, 2020, Seneca explicitly specified in writing that the Proposal incorporated a 'Payment Addendum' reflecting supplemental terms and conditions in support of the payment plan, a payment schedule, and two Oracle Exhibits." (alteration added). Seneca also points to a separate May 28, 2020 email from Seneca to Contracting Officer Newberg in which Seneca requested Contracting Officer Newberg to include a sentence in block 20 of the Standard Form 1449 stating that Seneca's Price Quote "**is hereby incorporated into this award in its entirety**." (emphasis in original). Seneca further alleges in its complaint:

> On May 29, 2020, Seneca again requested confirmation that the Seneca Global Services, LLC proposal Price Quote - REV 1, dated May 11, 2020, was incorporated into the award in its entirety, together with Exhibit A "End User Ordering Document" and Exhibit A-1 "Oracle Federal Master Agreement General Terms." Mr. Newberg responded on behalf of the Army that this "[was] the government's intent" and that, combined with the Standard Form 1449 contract that Mr. Newberg had prepared, "[t]he Four documents together can be considered the contract."

(alterations and capitalization in original).

Defendant argues that the above "extra-contractual statements are insufficient to effectuate incorporation by reference" because "[t]he Federal Circuit has consistently required contract language for incorporation by reference, explaining time and again that agreement to incorporate must be apparent from the contract itself." (emphasis in original; alteration added) (citing Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1344; and St. Christopher Assocs., L.P. v. United States, 511 F.3d at 1384). Additionally,

citing Beacon Point Associates LLC v. Department of Veterans Affairs, 139 F.4th at 1309, defendant argues that Seneca "analogously claims in its complaint that the Government agreed to incorporate its proposal through an email exchange between Seneca's personnel and an Army contracting officer. But just as in Beacon Point, such extracontractual communications are insufficient to incorporate a term into the contract as a matter of law."

In Beacon Point Associates LLC v. Department of Veterans Affairs, 139 F.4th 1306, "[t]he Department of Veterans Affairs issued a request seeking quotes for the lease of a cranial surgical navigation system for the surgical department at the Atlanta Veterans Affairs Medical Center." Id. at 1307 (alteration added). Beacon Point Associates LLC (Beacon Point) "submitted a Quote for the request titled 'VAATLANTA-STI-101519-01L03'" for a term of one base year and two option years. See id. (capitalization in original). Beacon Point's Quote included "a provision stating, '[p]rovided it obtains such sufficient funds, the Government shall exercise all renewal options.'" Id. (alteration, capitalization, and emphasis in original). After Beacon Point submitted its Quote to the Department of Veterans Affairs, "the agency emailed Beacon Point indicating its desire to award Beacon Point the contract and attaching an order." Id. "Beacon Point's representative responded to the agency's order, stating, 'I have attached the quote with the terms and conditions; this needs to be part of the contract.'" Id. Later, "the agency emailed Beacon Point again, reiterating its desire to enter the contract and attached an order, a copy of the Quote, and an award letter. The attached order used standard form (SF) 1449 titled 'Solicitation/Contract/Order for Commercial Items.'" Id. (internal references omitted). Thereafter, Beacon Point and the agency signed the contract on Standard Form 1449. See id. After Beacon Point performed the base year, "the agency notified Beacon Point that it would not exercise the first option period." Id. at 1308. Subsequently, "Beacon Point filed a certified breach of contract claim against the agency seeking $636,855.05 for failure to renew the contract and to use its best efforts to obtain funding for the contract, which Beacon Point alleged was required pursuant to the Quote's terms and conditions." Id. The dispute ultimately reached the United States Court of Appeals for the Federal Circuit. See id.

According to the United States Court of Appeals for the Federal Circuit in Beacon Point, "the single question before" the court was "whether the contract between Beacon Point and the Department of Veterans Affairs incorporated by reference Beacon Point's Quote." Id. at 1307. The Beacon Point court stated that the contract that Beacon Point and the Department of Veterans Affairs signed

> incorporated FAR 52.217-9, titled "Option to Extend the Term of the Contract." FAR 52.217-9(a) provides that the agency "may extend the term of th[e] contract" so long as it provides at least 30 days written notice, but that any preliminary notice "does not commit the Government to an extension." The contract, under the plain language of the incorporated FAR 52.217-9, gives the agency complete discretion to exercise the option years.

Beacon Point Assocs. LLC v. Dep't of Veterans Affs., 139 F.4th at 1308 (alteration and emphasis in original; internal citations omitted). The Beacon Point court continued:

> The contract's only reference to Beacon Point's Quote was in block 29, which states:
>
> > 29. AWARD OF CONTRACT: REF VAATLANTASTI-101510-01L03 OFFER DATED 5-29-2020. YOUR OFFER ON SOLICITATION (BLOCK 5) INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN IS ACCEPTED AS TO ITEMS: [Blank].

Id. (alteration and capitalization in original). The Beacon Point court acknowledged that block 29 of the Standard Form 1449 executed by Beacon Point and the Department of Veterans Affairs referenced Beacon Point's Quote, but stated that, "[b]y leaving 'blank' which items were accepted, Beacon Point's contract does not clearly communicate that the purpose of the contract's reference to the Quote was to incorporate the Quote into the contract to vary the contract's expressly incorporated FAR clauses." Id. at 1310 (alteration added). The Beacon Point court continued:

> Beacon Point contends that "[t]he purpose for including the Quote in the contract is documented by the contract formation process," which is extrinsic evidence that includes email exchanges between the parties. But "[t]o incorporate material by reference, a contract must use clear and express language of incorporation, which unambiguously communicates that the purpose is to incorporate the referenced material." Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 826 (Fed. Cir. 2010) (emphasis added). As we have explained, "[c]ontract interpretation begins with the language of the written agreement." NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (citation omitted); see also TEG-Paradigm Env't, Inc. v. United States, 465 F.3d 1329, 1338 (Fed. Cir. 2006) ("When the contract's language is unambiguous it must be given its 'plain and ordinary' meaning and the court may not look to extrinsic evidence to interpret its provisions.") (citation omitted). Thus, we must consider the language of the contract, rather than extrinsic evidence, to determine whether there was a clear purpose to make the Quote part of the contract.

Beacon Point Assocs. LLC v. Dep't of Veterans Affs., 139 F.4th at 1309 (alterations and emphasis in original; internal citation omitted). Therefore, the Beacon Point court concluded that "Beacon Point accepted a contract that references the Quote but does not clearly communicate that the purpose of the reference was to incorporate the Quote's terms into the contract. Thus, we hold that the contract does not incorporate by reference Beacon Point's Quote." Id. at 1310-11.

Although the Beacon Point case and the case currently before the court share some factual similarities, Seneca's position in the case currently before the court is even weaker than the contractor's position in Beacon Point. As discussed above, in Seneca's case currently before the court, the Standard Form 1449 executed by Seneca and defendant did not contain a single reference to Seneca's Price Quote or to the Payment Addendum section of Seneca's Price Quote. Thus, Seneca's position on incorporation is even less persuasive than by the contractor in Beacon Point, which accepted and signed a Standard Form 1449 that at least referenced the Beacon Point contractor's Quote, but that did not clearly communicate that the purpose of the reference was to incorporate the Beacon Point contractor's Quote's terms into the contract, see Beacon Point Assocs. LLC v. Dep't of Veterans Affs., 139 F.4th at 1310-11, because in plaintiff's case, Seneca accepted and signed a Standard Form 1449 which did not even reference Seneca's Price Quote or the Payment Addendum section of Seneca's Price Quote at all. Accordingly, the Beacon Point case weighs against Seneca's argument that the Payment Addendum section of Seneca's Price Quote was incorporated into the Contract by reference in the case currently before the court.

In an attempt to distinguish Beacon Point from the case currently before the court, Seneca argues that, in plaintiff's case, "there was the Contracting Officer's stated intent, which was followed by a Contract modification and an execution of the Notice of Assignment that expressly confirmed Mr. Newberg's prior intent that the unique Payment Terms would be included in the Contract." (internal citation omitted). As indicated above, however, the Notice of Assignment addressed an issue of which entity would be paid under the Contract and, without further changes to the underlying Contract by clear, intentional modification by an authorized government official, could not alter the terms of the Standard Form 1449 signed by the parties. Moreover, as the United States Court of Appeals for the Federal Circuit in Beacon Point explained, this court first "must consider the language of the contract, rather than extrinsic evidence, to determine whether there was a clear purpose to make" an extra-contractual document "part of the contract." See Beacon Point Assocs. LLC v. Dep't of Veterans Affs., 139 F.4th at 1309. In Seneca's case, the plain language of the Contract as signed does not demonstrate a clear purpose to incorporate the Payment Addendum section of Seneca's Price Quote into the Contract by reference. The May 2020 emails exchanged between Seneca and Contracting Officer Newberg prior to the execution of the Contract on May 31, 2020 are extrinsic evidence that do not change the analysis in Seneca's case, especially because Contracting Officer Newberg also indicated that he first had to check with his legal department before incorporating Seneca's proposed terms. See id.

Finally, Seneca argues that "the Contract on its face is ambiguous and susceptible to multiple interpretations" because, although "the Contract contains FAR 52.217-9," "the Contract also incorporates Seneca's Payment Terms through the Notice of Assignment and the Certificate of Acceptance, which establish the Army agreed to exercise the options subject to certain conditions, including the availability of appropriated funds." (emphasis in original). Plaintiff, therefore, asserts that "extrinsic evidence is needed to interpret the contract." Defendant, however, argues that the Contract is unambiguous because, as discussed above, the Payment Addendum section of Seneca's Price Quote

was not incorporated into the Contract by reference, and the only provision in the Contract regarding the exercise of option years is "the full text of Federal Acquisition Regulation (FAR) 52.217-9, which provides that '[t]he Government may extend the term of this contract by written notice to the Contractor . . . [.]'" (first alteration and omission in original).

"Courts may not resort to extrinsic evidence 'to create an ambiguity where a contract was not reasonably susceptible of differing interpretations at the time of contracting.'" Shell Oil Co. v. United States, 751 F.3d at 1304 (quoting Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin., 169 F.3d 747, 752 (Fed. Cir. 1999)); see also Bell BCI Co. v. United States, 570 F.3d 1337, 1341 (Fed. Cir.) ("Only in the event of an ambiguity may [the court] examine extrinsic or parol evidence." (alteration added)), reh'g and reh'g en banc denied (Fed. Cir. 2009); TEG-Paradigm Env't, Inc. v. United States, 465 F.3d 1329, 1340 (Fed. Cir. 2006) ("[I]t is not permissible to use these extrinsic sources to impart ambiguity into an otherwise unambiguous contract[.]" (alterations added)); McAbee Constr., Inc. v. United States, 97 F.3d at 1435 ("'[E]xtrinsic evidence . . . should not be used to introduce an ambiguity where none exists.'" (alteration and omission in original) (quoting Interwest Constr. v. Brown, 29 F.3d 611, 615 (Fed. Cir. 1994))); Mostafa v. United States, 180 Fed. Cl. at 489 ("If a contract's terms are 'clear and unambiguous,' the Court 'may not resort to extrinsic evidence to interpret them.'" (quoting McAbee Constr., Inc. v. United States, 97 F.3d at 1435)); Sundowner 102, LLC v. United States, 108 Fed. Cl. 737, 741-42 (2013); K-Con Bldg. Sys., Inc. v. United States, 107 Fed. Cl. 571, 600 (2012). Extrinsic evidence "may not be used 'to justify reading a term into an agreement that is not found there.'" Warren v. Office of Pers. Mgmt., 407 F.3d 1309, 1314 (Fed. Cir. 2005) (quoting Fox v. Office of Pers. Mgmt., 100 F.3d 141, 145 (Fed. Cir. 1996)); see also Holland v. United States, 621 F.33 1366, 1378 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir.), cert. denied, 565 U.S. 928 (2011).

In the case currently before the court, the only term expressly stated in the Contract regarding the exercise of option years was FAR 52.217-9, which, as indicated above, stated:

> (a) The Government may extend the term of this contract by written notice to the Contractor within 30 days of contract award provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least 30 days before the contract expires. The preliminary notice does not commit the Government to an extension.
>
> (b) If the Government exercises this option, the extended contract shall be considered to include this option clause.
>
> (c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed 60 months.

The plain language of FAR 52.217-9 does not obligate the government to exercise Option Years 3 and 4. To the contrary, the plain language of FAR 52.217-9 grants the government broad discretion to decide whether to exercise an option year or not. See 48 C.F.R.

§ 52.217-9 (using permissive language such as: "The Government may extend the term of this contract;" "preliminary notice does not commit the Government to an extension;" and "If the Government exercises this option, the extended contract shall be considered to include this option clause" (emphases added)); see also Beacon Point Assocs. LLC v. Dep't of Veterans Affs., 139 F.4th at 1308 ("The contract, under the plain language of the incorporated FAR 52.217-9, gives the agency complete discretion to exercise the option years.").

Moreover, the United States Court of Appeals for the Federal Circuit has recognized that the government enjoys broad discretion to exercise an option year or not. See Gov't Sys. Advisors, Inc. v. United States, 847 F.2d 811, 813 (Fed. Cir. 1988) ("The provisions and terms of the contract, read as a whole, plainly evidence that renewal of the contract was within the complete discretion of the government. An option is normally an option, and nothing in [the contract] limited the circumstances under which the government could decline to exercise that bargained-for right in this case." (alteration added)); see also Sys. Plan. Corp. v. United States, 107 Fed. Cl. 710, 718 (2012) ("In general, an option provision in a contract obligates the contractor to perform additional work if the government exercises the option, but does not create a legal obligation on the part of the government to exercise the option and require the work."). Thus, when an option clause is present in a contract, contractors are generally not entitled to damages based on the government's decision not to exercise an option period. See, e.g., OK's Cascade Co. v. United States, 97 Fed. Cl. 635, 646 (2011) ("[C]ontractors are not entitled to damages based upon the Government's failure to exercise options where the Government has the discretion to exercise the options, such as here." (alteration added) (citing Hi-Shear Tech. Corp. v. United States, 356 F.3d 1372, 1380 (Fed. Cir. 2004))), aff'd, 467 F. App'x 888 (Fed. Cir. 2012). A limited exception to this general rule is when the government fails to exercise an option in bad faith, which is not alleged by Seneca in the case currently before the court. See Siemens Gov't Techs. v. United States, 177 Fed. Cl. 165, 175 (2025) ("Even when a contractual provision vests the government with 'essentially unfettered discretion,' contractors 'can recover for the government's failure to exercise an option if the government's failure was in bad faith.'" (citing Vanquish Worldwide, LLC v. United States, 147 Fed. Cl. 390, 401 (2020) (quoting Dekatron Corp. v. United States, 128 Fed. Cl. 115, 118 (2016)))); see also Bannum, Inc. v. United States, 80 Fed. Cl. 239, 249 (2008); Hi-Shear Tech. Corp. v. United States, 53 Fed. Cl. 420, 436 (2002) ("A contractor can recover for the government's failure to exercise an option if the government's failure was in bad faith."), aff'd, 356 F.3d 1372 (Fed. Cir. 2004).

Despite the plain language of FAR 52.217-9 quoted above, Seneca argues that the Contract is ambiguous with respect to whether defendant retained the discretion to decide not to exercise an option year in the Contract because, according to Seneca, "the Contract also incorporates" the Payment Addendum section of Seneca's Price Quote, which limited defendant's discretion not to exercise option years under "certain conditions, including the availability of appropriated funds." (emphasis in original). As the court has determined above, however, the Payment Addendum section of Seneca's Price Quote was not incorporated into the Contract by reference. Therefore, even if the terms of FAR 52.217-9 and the Payment Addendum section of Seneca's Price Quote conflict, this does

not resolve the dispute currently before the court in Seneca's favor. See Sundowner 102, LLC v. United States, 108 Fed. Cl. at 741-42 ("By its terms, the contract clearly gave the government the option of extending the contract, or not. There is no ambiguity in this respect, and it is therefor [sic] unnecessary, and indeed, impermissible to consult extrinsic evidence to 'explain' unambiguous terms." (alteration added)). As in Beacon Point Associates LLC v. Department of Veterans Affairs, discussed more fully above, FAR 52.217-9 controls in the case currently before the court because there was no language explicitly incorporated into Seneca's Contract to vary the terms of FAR 52.217-9. See Beacon Point Assocs. LLC v. Dep't of Veterans Affs., 139 F.4th at 1310 ("The contract's expressly incorporated FAR clauses provided the agency with complete discretion in exercising the option years. If Beacon Point intended to vary the terms of these FAR clauses [in Beacon Point] by incorporating its Quote's terms and conditions into the contract, it should have ensured that the contract expressly identified that the Quote's terms and conditions were incorporated into the contract." (alteration added)). Moreover, plaintiff cannot rely on Contracting Officer Newberg's May 29, 2020 email to Seneca, in which Contracting Officer Newberg stated that it was the "government's intent" to incorporate Seneca's Price Quote into the Contract, but also in which Contracting Officer Newberg indicated in the same email that he would first have to consult with his legal department before incorporating Seneca's Price Quote into the Contract, in order to prove that Seneca's Price Quote or the Payment Addendum section of Seneca's Price Quote was incorporated into the Contract by reference, or to create ambiguity in an otherwise unambiguous Contract. See TEG-Paradigm Env't, Inc. v. United States, 465 F.3d at 1340 ("[I]t is not permissible to use these extrinsic sources to impart ambiguity into an otherwise unambiguous contract[.]" (alterations added)). Additionally, the parties both ultimately executed a Standard Form 1449 that did not contain a single reference to Seneca's Price Quote or to the Payment Addendum section of Seneca's Price Quote.

Based on the foregoing discussion, neither Seneca's Price Quote, nor the Payment Addendum section of Seneca's Price Quote, were incorporated into Seneca's Contract by reference. Instead, pursuant to FAR 52.217-9, which was included in the Contract in full, the Contract unambiguously granted the government broad discretion to decide whether to exercise an option year or not and extrinsic evidence, for example, Contracting Officer Newberg's May 29, 2020 email, is unnecessary to interpret the terms of the Contract.[29] The Contract did not impose a duty on defendant to exercise Option Year 3

---

[29] The court notes that a contracting officer's discretionary decision, such as the decision whether or not to exercise an option year, must be based on the individual contracting officer's independent judgment when he or she takes an action regarding the contract. See Kellogg Brown & Root Servs., Inc. v. United States, 109 Fed. Cl. 288, 300 (2013) (citing Atkins N. Am., Inc. v. United States, 106 Fed. Cl. 491, 499 (2012) (citing Pac. Architects & Eng'rs Inc. v. United States, 491 F.2d 734, 744 (Ct. Cl. 1974))); see also N. Star Alaska Hous. Corp. v. United States, 76 Fed. Cl. 158, 209 ("[A] contracting officer may not forsake his duties, but rather must ensure that his decisions are the product of his personal and independent judgment." (alteration added) (citing CEMS, Inc. v. United States, 65 Fed. Cl. 473, 479-80 (2005))), appeal dismissed, 226 F. App'x 1004 (Fed. Cir. 2007). Therefore, although Contracting Officer Newberg's May 29, 2020 email indicated

and Option Year 4, and defendant's discretionary choice not to exercise Option Year 3 or Option Year 4 under the Contract was not a breach of the Contract.[30] The court, therefore, dismisses Count I of plaintiff's complaint for failure to state a claim upon which relief can be granted. See Oliva v. United States, 961 F.3d at 1362 (stating that a plaintiff must first demonstrate "an obligation or duty arising out of the contract" and "a breach of that duty" in order to recover for breach of contract).

**Count II: Breach of the Covenant of Good Faith and Fair Dealing**

In Count II of plaintiff's complaint, plaintiff alleges that defendant breached the covenant of good faith and fair dealing because "[t]he Army's conduct deprived Seneca of the expected fruits of the Contract." (alteration added). Plaintiff alleges that, based on the Army's communications with industry, Seneca's Price Quote "was structured with discounted pricing and five discrete periods (base year plus four option years), but which was also predicated on the Contract running for the full five years." Plaintiff continues:

> The Army received a discounted price for the Contract payment covering the base year and Options [sic] Years 1 and 2, understanding that the initial savings would be spread out across the Contract's remaining option years. The Army accepted this payment structure. But the Army interfered with the Contract and caused Seneca to incur a loss as a result. The Army's interference and failure to cooperate deprived Seneca of the contemplated and reasonably expected benefits of the Contract arrangement.

---

that it was the "government's intent," contingent on legal review, to incorporate Seneca's Price Quote into the Contract by reference, Contracting Officer Perez, as the new contracting officer assigned to the Contract at the time of her decision not to exercise Option Year 3, had a duty to independently review the Contract terms and the then-present circumstances to determine whether or not to exercise Option Year 3.

[30] The court notes that, at oral argument in the above captioned case, plaintiff's counsel stated that "the first key question is whether these proposal terms and conditions [referring to the Payment Addendum section of Seneca's Price Quote] that limited the Government's discretion was, in fact, incorporated in the contract." (alteration added). Plaintiff's counsel continued, "if you [the court] conclude that, no, this was not incorporated into the contract by reference, then I think that Seneca has quite an uphill climb. And so anyway, I think that that's a useful first gating issue." (alteration added). Plaintiff's counsel also stated, "once you [the court] have concluded that it [referring the Payment Addendum section of Seneca's Price Quote] has been incorporated by reference, then I think the next question is what is the legal effect of those limitations. And then I think that's what gets you into the questions about the Antideficiency Act." (alterations added). Plaintiff's counsel concluded: "I would agree with the Government that if those questions fail, if those two gating items fail, then the entire complaint should likely be dismissed because everything really is contingent on that contract language [referring to the Payment Addendum section of Seneca's Price Quote] that was incorporated in the contract and that did limit" defendant's discretion to exercise option years. (alteration added).

(alteration added). Plaintiff, therefore, alleges that defendant "breached the implied duty of good faith and fair dealing by deciding not to exercise the last two option years thereby allowing the Army to take unfair advantage of Seneca."[31] Moreover, plaintiff asserts, "[t]o the extent this Court determines the Proposal was not properly incorporated by reference (which it should not), it still would not alter the conclusion that Seneca has properly stated a claim for breach of the covenant of good faith and fair dealing" because courts "must look to the nature of the bargain and the parties' reasonable expectations when they entered into the Contract in the first place in assessing whether a complaint states a valid cause of action for the breach of good faith and fair dealing." (alteration added). Plaintiff also alleges that defendant "undermined a specific promise" to plaintiff by "represent[ing] that Seneca's Payment Terms were incorporated in the Contract" and thereafter "failing to exercise all option years." (alteration added). In its motion to dismiss, defendant argues that it could not have breached the implied duty of good faith and fair dealing by not exercising Option Year 3 and Option Year 4 because the Contract gave defendant "discretion over the decision whether to extend Seneca's performance beyond the base year" and "[t]he implied duty of good faith and fair dealing cannot impose an obligation 'inconsistent with' the Contract's grant of discretion." (alteration added) (quoting Dobyns v. United States, 915 F.3d at 739).

The United States Supreme Court has stated that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." Alabama v. North Carolina, 560 U.S. 330, 351 (2010) (alteration added) (quoting Restatement (Second) of Contracts § 205 (1981)) (alteration omitted); see also Authentic Apparel Grp., LLC v. United States, 989 F.3d at 1018 (citing Dobyns v. United States, 915 F.3d at 739; citing Metcalf Constr. Co. v. United States, 742 F.3d 984, 990 (Fed. Cir. 2014)); Precision Pine & Timber, Inc. v. United States, 596 F.3d at 828; P.R. Burke Corp. v. United States, 277 F.3d 1346, 1360 (Fed. Cir. 2002); Essex Electro Eng'rs, Inc. v. Danzig, 224 F.3d 1283, 1291 (Fed. Cir. 2000); Scott Timber Co. v. United States, 692 F.3d 1365, 1372 (Fed. Cir. 2012); Spectre Corp. v. United States, 178 Fed. Cl. 1, 10 (2025), appeal dismissed, No. 2026-1087, 2025 WL 3721425 (Fed. Cir. Dec. 23, 2025); Taino Constr. Grp., LLC v. United States, 177 Fed. Cl. 730, 741 (2025); Hamilton Square, LLC v. United States, 177 Fed. Cl. 146, 164 (2025); SLSCO, Ltd. v. United States, 176 Fed. Cl. at 784; Keyes Helium Co., LLC v. United States, 167 Fed. Cl. 283, 292 (2023), aff'd in

[31] In plaintiff's complaint, plaintiff also alleges "[u]pon information and belief, the Army has continued to use the [Oracle] Software after the Contract expired demonstrating that the Army had a bona fide need for the Software." (alterations added). Defendant does not address this allegation in defendant's briefings submitted to the court. At oral argument in the above captioned case, defendant's counsel stated that the government "would dispute an allegation that the Army continued using it [the Oracle Software] after declining to exercise option year three," however, defendant's counsel also stated that he did not "know the answer to the question whether the Army continued using it." (alteration added). There is no evidence in the record before the court, however, to support plaintiff's allegation that the government continued to use the Oracle Software provided by plaintiff under the Contract, or other Oracle software, following the government's decision not to exercise Option Year 3.

part, vacated in part, rev'd in part, No. 2024-1132, 2025 WL 1733297 (Fed. Cir. June 23, 2025); 27-35 Jackson Ave. LLC v. United States, 162 Fed. Cl. 550, 560 (2022) (citing Lakeshore Eng'g Servs. v. United States, 748 F.3d 1341, 1349 (Fed. Cir. 2014)), aff'd sub nom. 27-35 Jackson Ave LLC v. United States, 127 F.4th 1314 (Fed. Cir. 2025).

"A party breaches the contract when it fails to abide by this implied duty [of good faith and fair dealing], which includes 'the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract.'" Dobyns v. United States, 915 F.3d at 739 (alteration added) (quoting Centex Corp. v. United States, 395 F.3d 1283, 1304 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2005)); see also LaBatte v. United States, 899 F.3d 1373, 1379 (Fed. Cir. 2018); Metcalf Constr. Co. v. United States, 742 F.3d at 991; Agility Pub. Warehousing Co. KSCP v. Mattis, 852 F.3d 1370, 1383-84 (Fed. Cir. 2017); Precision Pine & Timber, Inc. v. United States, 596 F.3d at 820 n.1; Crestview Clinical Lab'y, LLC v. United States, 181 Fed. Cl. 1, 23 (2026); Spectre Corp. v. United States, 178 Fed. Cl. at 10; Taino Constr. Grp., LLC v. United States, 177 Fed. Cl. at 741; Baistar Mechanical, Inc. v. United States, 128 Fed. Cl. 504, 525 (2016). As indicated by a Judge of the United States Court of Federal Claims, "[t]he court applies a reasonableness standard in assessing whether a party breached its duty to cooperate, which requires a factual inquiry that depends upon 'the particular contract, its context, and its surrounding circumstances.'" Baistar Mechanical, Inc. v. United States, 128 Fed. Cl. at 525 (alteration added) (quoting Axion Corp. v. United States, 75 Fed. Cl. 99, 121 (2007)); see also Mansoor Int'l Dev. Servs., Inc. v. United States, 121 Fed. Cl. 1, 6 (2015) ("The implied duty [of good faith and fair dealing] stems from the consensual terms reflected in an express contract, but it addresses the parties' reasonable expectations that may not have been embodied in explicit contractual language." (alteration added; footnote omitted)).

"[A] specific promise must be undermined for the implied duty [of good faith and fair dealing] to be violated." Dobyns v. United States, 915 F.3d at 739 (alterations added); see also Spectre Corp. v. United States, 178 Fed. Cl. at 23; Sunrez Corp. v. United States, 175 Fed. Cl. 461, 479 (2025); Aries Constr. Corp. v. United States, 164 Fed. Cl. 290, 294 (2023); Helix Elec., Inc. v. United States, 68 Fed. Cl. 571, 587 (2005). Thus, "'[t]he implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions.'" Dobyns v. United States, 915 F.3d at 739 (alteration in original) (quoting Precision Pine & Timber, Inc. v. United States, 596 F.3d at 831); see also BGT Holdings LLC v. United States, 984 F.3d 1003, 1016 (Fed. Cir. 2020) (finding that "the implied duty of good faith and fair dealing provides no basis for extra-contractual relief" because the contractor "cannot use the doctrine of good faith and fair dealing to complain of the very conduct that the contract expressly permits" (citing Precision Pine & Timber, Inc. v. United States, 596 F.3d at 831)); Centex Corp. v. United States, 395 F.3d at 1304-06; Agility Pub. Warehousing Co. KSCP v. Mattis, 852 F.3d at 1384; Gov't Acquisitions, Inc. v. United States, 2026 WL 2264123, at *12; Hamilton Square, LLC v. United States, 177 Fed. Cl. at 164; SLSCO, Ltd. v. United States, 176 Fed. Cl. at 784; CanPro Invs. Ltd. v. United States, 131 Fed. Cl. 528, 532 (2017) (citation omitted); Jarvis v. United States, 43 Fed. Cl. 529, 534 ("The implied duty of good faith and fair dealing does not form the basis for

wholly new contract terms, particularly terms which would be inconsistent with the express terms of the agreement."), recons. denied, 45 Fed. Cl. 19 (1999). As explained by the United States Court of Appeals for the Federal Circuit:

> [W]hile the implied duty exists because it is rarely possible to anticipate in contract language every possible action or omission by a party that undermines the bargain, the nature of that bargain is central to keeping the duty focused on "honoring the reasonable expectations created by the autonomous expressions of the contracting parties."

Metcalf Constr. Co. v. United States, 742 F.3d at 991 (alteration added) (quoting Tymshare, Inc. v. Covell, 727 F.2d 1145, 1152 (D.C. Cir. 1984)); see also Canpro Invs. Ltd. v. United States, 130 Fed. Cl. at 350.

In Precision Pine & Timber, Inc. v. United States, the United States Court of Appeals for the Federal Circuit indicated that "[n]ot all misbehavior, however, breaches the implied duty of good faith and fair dealing owed to other parties to a contract." Precision Pine & Timber, Inc. v. United States, 596 F.3d at 829 (alteration added). The United States Court of Appeals for the Federal Circuit further explained that:

> Cases in which the government has been found to violate the implied duty of good faith and fair dealing typically involve some variation on the old bait-and-switch. First, the government enters into a contract that awards a significant benefit in exchange for consideration. Then, the government eliminates or rescinds that contractual provision or benefit through a subsequent action directed at the existing contract. See, e.g., [First Nationwide Bank v. United States, 431 F.3d 1342,] 1350–51 [(Fed. Cir. 2005)]; Centex Corp. v. United States, 395 F.3d 1283, 1304–07 (Fed. Cir. 2005); see also Hercules [Inc. v. United States], 516 U.S. 417, 116 S. Ct. 981, 134 L.Ed.2d 47 [(1996)]. The government may be liable for damages when the subsequent government action is specifically designed to reappropriate the benefits the other party expected to obtain from the transaction, thereby abrogating the government's obligations under the contract. Centex, 395 F.3d at 1311.

Precision Pine & Timber, Inc. v. United States, 596 F.3d at 829 (alterations added). In Metcalf Construction Co., Inc. v. United States, the United States Court of Appeals for the Federal Circuit subsequently expanded on the language of Precision Pine & Timber, Inc., after finding a Judge of the United States Court of Federal Claims had read the language of the decision too narrowly. See Metcalf Constr. Co. v. United States, 742 F.3d at 993. The United States Court of Appeals for the Federal Circuit in Metcalf Construction explained:

> The trial court misread Precision Pine, which does not impose a specific-targeting requirement applicable across the board or in this case. The cited portion of Precision Pine does not purport to define the scope of good-faith-

> and-fair-dealing claims for all cases, let alone alter earlier standards. The passage cited by the trial court, after saying as a descriptive matter that cases of breach "typically involve some variation on the old bait-and-switch," Precision Pine, 596 F.3d at 829, says that the government "may be liable"—not that it is liable only—when a subsequent government action is "specifically designed to reappropriate the benefits the other party expected to obtain from the transaction." Id. (emphasis added). Precision Pine then states its holding as rejecting breach for two reasons combined: the challenged government actions "were (1) not 'specifically targeted[' at the contracts,] and (2) did not reappropriate any 'benefit' guaranteed by the contracts." Id.
>
> As that statement indicates, the court in Precision Pine did not hold that the absence of specific targeting, by itself, would defeat a claim of breach of the implied duty—i.e., that proof of specific targeting was a requirement for a showing of breach. When the court said that specific targeting would have been required for breach of the duty in that case, id. at 830, it did so in a context in which the more general bargain-impairment grounds for breach of the duty were unavailable, because the suspension-by-court-order provision expressly authorized the suspension, without limitation on the time of compliance with the order. That is enough to make clear that specific targeting is not a general requirement. In addition, the challenged government conduct in Precision Pine occurred in implementing a separate government authority and duty independent of the contract, namely, enforcement of and compliance with the injunction. In that context—as in the legislative context from which Precision Pine borrowed its reference to specific targeting, 596 F.3d at 830 (citing Centex and First Nationwide Bank)—the "specifically targeted" language protects against use of the implied contract duty to trench on the authority of other government entities or on responsibilities imposed on the contracting agency independent of contracts. The present case involves no such concern.

Metcalf Constr. Co. v. United States, 742 F.3d at 993 (alteration and emphasis in original). In Metcalf Construction, the United States Court of Appeals for the Federal Circuit instructed the trial court to focus on the broader language of the Federal Circuit's earlier opinions, and specifically stated:

> The covenant of good faith and fair dealing . . . imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." Centex Corp. v. United States, 395 F.3d 1283, 1304 (Fed. Cir. 2005) (emphases added). "Both the duty not to hinder and the duty to cooperate are aspects of the implied duty of good faith and fair dealing." Precision Pine, 596 F.3d at 820 n.1. What is promised or disclaimed in a contract helps define what constitutes "lack of diligence and interference with or failure to cooperate in the other party's

> performance." Malone [v. United States], 849 F.2d [1441,] 1445 [(Fed. Cir. 1988)].

Metcalf Constr. Co. v. United States, 742 F.3d at 991 (alterations added; emphasis and omission in original).

In addition, although certainly not absolute, government officials are generally presumed to act in good faith. See Oak Grove Techs., LLC v. United States, 116 F.4th 1364, 1380 (Fed. Cir. 2024) ("[W]e engage in a 'strong presumption' that government officials . . . act consistent with their duties." (alteration and omission added) (citing Sanders v. U.S. Postal Serv., 801 F.2d 1328, 1331 (Fed. Cir. 1986))); see also Croman Corp. v. United States, 724 F.3d 1357, 1364 (Fed. Cir. 2013) ("The presumption that government officials act in good faith is enshrined in our jurisprudence."); Rd. & Highway Builders, LLC v. United States, 702 F.3d 1365, 1368 (Fed. Cir. 2012) ("We and our predecessor court, the Court of Claims, have long upheld the principle that government officials are presumed to discharge their duties in good faith." (citations omitted)); Savantage Fin. Servs. v. United States, 595 F.3d 1282, 1288 (Fed. Cir. 2010) ("[G]overnment officials are presumed to act in good faith." (alteration added) (citing Alaska Airlines, Inc. v. Johnson, 8 F.3d 791, 795 (Fed. Cir. 1993))); Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1337 (Fed. Cir. 2004); Garrett Elecs., Inc. v. United States, 163 Fed. Cl. 632, 659 (2023); Bae Sys. Norfolk Ship Repair, Inc. v. United States, 163 Fed. Cl. 217, 238 (2022).

The party alleging a breach of the implied duty of good faith and fair dealing by the government must offer "clear and convincing evidence" that the government did not act in good faith in order to prevail. See 27-35 Jackson Ave LLC v. United States, 127 F.4th at 1324 (citing Rd. & Highway Builders, LLC v. United States, 702 F.3d at 1369); see also Croman Corp. v. United States, 724 F.3d at 1364; Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002). The United States Court of Appeals for the Federal Circuit has addressed the standard for overcoming the presumption of good faith as follows:

> Government officials are presumed to "act 'conscientiously in the discharge of their duties.'" Kalvar Corp., Inc. v. United States, 543 F.2d 1298, 1301 (Ct. Cl. 1976) (quoting Librach v. United States, 147 Ct. Cl. 605, 612 (1959)). Courts have always been "loath to find to the contrary," and to induce a court to abandon the presumption of good faith dealing, "requires 'well-nigh irrefragable proof.'" Id. at 1301–02 (quoting Knotts v. United States, 128 Ct. Cl. 489, 492, 121 F. Supp. 630 (1954)). Thus, [a plaintiff] must offer clear and convincing evidence that [the government] did not act in good faith in order to prevail on this issue. Am–Pro Protective Agency, 281 F.3d at 1239–40.

Croman Corp. v. United States, 724 F.3d at 1364 (alterations added); see also Savantage Fin. Servs. v. United States, 595 F.3d at 1288; Am-Pro Protective Agency, Inc. v. United States, 281 F.3d at 1239; Sand Point Servs., LLC v. United States, 180 Fed. Cl. 653, 663

(2026); Zolon PCS II, LLC v. United States, 176 Fed. Cl. 279, 295 (2025) ("'There is a "strong presumption that government contract officials exercise their duties in good faith,"' and to defeat that presumption 'a protestor must present "well-nigh irrefragable proof" that the government officials did not act in good faith.'" (quoting Bae Sys. Norfolk Ship Repair, Inc. v. United States, 163 Fed. Cl. at 238)); Square One Armoring Serv. Inc. v. United States, 123 Fed. Cl. 309, 329 (2015) (holding that a plaintiff alleging that the government has acted in bad faith "must offer 'well-nigh irrefragable proof' in support of its claim" (quoting Croman Corp. v. United States, 724 F.3d at 1364)); Kogan v. United States, 112 Fed. Cl. 253, 266 (2013) ("The presumption of good faith 'is valid and binding unless well-nigh irrefragable proof is offered to rebut or overcome it.'" (quoting McEachern v. Office of Pers. Mgmt., 776 F.2d 1539, 1545 (Fed. Cir. 1985))).

The presumption that government officials act in good faith, however, is rebuttable and should not be automatically accepted by the court. The United States Court of Appeals for the Federal Circuit in Am-Pro Protective Agency, Inc. v. United States further defined the "clear and convincing" standard of proof a protestor must meet to prevail as:

> A requirement of proof by clear and convincing evidence imposes a heavier burden upon a litigant than that imposed by requiring proof by preponderant evidence but a somewhat lighter burden than that imposed by requiring proof beyond a reasonable doubt. "Clear and convincing" evidence has been described as evidence which produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is "highly probable."

Am-Pro Protective Agency, Inc. v. United States, 281 F.3d at 1240 (emphasis in original; internal citations omitted in original) (quoting Price v. Symsek, 988 F.2d 1187, 1191 (Fed. Cir. 1993)). Clear and convincing evidence is not established through "mere allegations," see FastShip, LLC v. United States, 892 F.3d 1298, 1307 (Fed. Cir. 2018), or "bare assertion[s].'" See Freeman v. United States, 875 F.3d 623, 631 (Fed. Cir. 2017) (alteration added).

In the case currently before the court, plaintiff has failed to allege facts to demonstrate by clear and convincing evidence that defendant breached the implied duty of good faith and fair dealing by deciding not to exercise Option Year 3 and Option Year 4. As stated in Baistar Mechanical, Inc. v. United States, this court applies a "reasonableness standard" to determine whether the government breached the implied duty of good faith and fair dealing, considering "'the particular contract, its context, and its surrounding circumstances.'" Baistar Mechanical, Inc. v. United States, 128 Fed. Cl. at 525 (quoting Axion Corp. v. United States, 75 Fed. Cl. at 121). Seneca and defendant executed the Contract at issue on May 31, 2020, using Standard Form 1449 for commercial items, which included ten, separately priced, FFP CLINs. The Contract indicated that $10,000,000.00 was obligated for the base year, which included $6,760,000.00 for CLIN 0001 (Unlimited Licensing Agreement – Oracle Software) and $3,240,000.00 for CLIN 0002 (Maintenance and Technical Support Service). Although plaintiff alleges that defendant accepted "discounted pricing" and "underst[ood] that the

initial savings would be spread out across the Contract's remaining option years," (alteration added), nothing in the express language of the executed Contract reflects defendant's specific acceptance of a discounted pricing structure predicated on the Contract running for five years. More importantly, the Contract also specified a base period of performance of May 31, 2020 to May 30, 2021, with four additional one-year option periods. As the court already has determined above, FAR 52.217-9, the only term in the Contract regarding the exercise of option years, granted the government broad discretion to decide whether to exercise an option year or not. See also 48 C.F.R. § 52.217-9. Therefore, in Seneca's case, it was not reasonable for plaintiff to expect that the Army was obligated to exercise all four option years because the Contract explicitly stated otherwise. The implied duty of good faith and fair dealing "cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." See Dobyns v. United States, 915 F.3d at 739. The plain language of FAR 52.217-9, which was included in the Contract between Seneca and defendant, and which granted the government broad discretion to decide whether to exercise an option year or not, is fatal to plaintiff's breach of the implied duty of good faith and fair dealing claim.

In addition to the plain language of the Contract, neither the "context" nor the "surrounding circumstances" of the Contract between Seneca and defendant warrant a finding that defendant breached the implied duty of good faith and fair dealing by deciding not to exercise Option Year 3 and Option Year 4. See Baistar Mech., Inc. v. United States, 128 Fed. Cl. at 525; see also Mansoor Int'l Dev. Servs., Inc. v. United States, 121 Fed. Cl. at 6 (stating that the implied duty of good faith and fair dealing "stems from the consensual terms reflected in an express contract, but it addresses the parties' reasonable expectations that may not have been embodied in explicit contractual language"). As discussed above, plaintiff alleges that Seneca's Price Quote "was structured with discounted pricing and five discrete periods (base year plus four option years), but which was also predicated on the Contract running for the full five years," and that defendant "underst[ood] that the initial savings would be spread out across the Contract's remaining option years." (alteration added). Plaintiff also alleges in its complaint that

> [o]n May 29, 2020, Seneca again requested confirmation that the Seneca Global Services, LLC proposal Price Quote – REV 1, dated May 11, 2020, was incorporated into the award in its entirety, together with Exhibit A "End User Ordering Document" and Exhibit A-1 "Oracle Federal Master Agreement General Terms." Mr. Newberg responded on behalf of the Army that this "[was] the government's intent" and that, combined with the Standard Form 1449 contract that Mr. Newberg had prepared, "[t]he Four documents together can be considered the contract."

(first alteration added; other alterations and capitalization in original). As indicated above, according to the Contracting Officer's Final Decision, however, Contracting Officer Newberg's same May 29, 2020 email also stated: "I will include a paragraph once our legal department let's [sic] know how they will like it phrased." (alteration in original). None

of the above quoted language from Contracting Officer Newberg's May 29, 2020 email contains a specific promise by the government, including by Contracting Officer Newberg, to exercise all four option years under the Contract. Moreover, there is no evidence in the record before the court that Contracting Officer Newberg subsequently confirmed that Seneca's proposed terms were acceptable to the government before or after the Contract was executed on May 31, 2020. Additionally, plaintiff has not identified any document in the record before the court in which defendant made a specific promise to exercise all four option years. Without identifying a specific promise to exercise all option years, including Option Year 3 and Option Year 4, plaintiff has failed to establish a breach of the implied duty of good faith and fair dealing. See Dobyns v. United States, 915 F.3d at 739.

In Seneca's case currently before the court, the implied duty of good faith and fair dealing cannot serve as a basis for the relief Seneca seeks in this case. As explained above, the Contract entered into by Seneca and defendant explicitly granted defendant discretion to decide whether or not to exercise Option Year 3 and Option Year 4. Although Seneca argues that "[t]he Army breached the implied duty of good faith and fair dealing by deciding not to exercise the last two option years," (alteration added), Seneca cannot use the doctrine of good faith and fair dealing to complain of the very conduct that the Contract expressly permits. See Gov't Acquisitions, Inc. v. United States, 2026 WL 2264123, at *12 ("Given plaintiff's complaint concerns the government's discretion to exercise an option—which is expressly permitted by the Contract—plaintiff 'cannot use the doctrine of good faith and fair dealing to complain of the very conduct that the contract expressly permits.'" (quoting BGT Holdings LLC v. United States, 984 F.3d at 1016)). The court, therefore, dismisses Count II of plaintiff's complaint for failure to state a claim upon which relief can be granted by this court.

**Count III: Breach of Warranty**

In Count III of plaintiff's complaint, Seneca quotes from the "Transaction Background" term in the Payment Addendum section of Seneca's Price Quote to allege that defendant made, and breached, the following express warranty: "Contractor accepts the payment amounts [in the Payment Schedule] in reliance on the Government's undertakings pursuant to this Addendum including the Government's warrant that the use of the system is essential to its proper operation for the entire term' of the Contract, including all renewal options." (alteration in original). Plaintiff alleges that defendant breached this alleged express warranty by deciding not to exercise Option Year 3 and Option Year 4 available under the Contract. Plaintiff further alleges that it "reasonably relied" on the alleged express warranty by "procuring non-cancellable [Oracle] Software licenses and providing the [Oracle] Software at a favorable price, made available to the Army under the Contract." (alterations added). Defendant has not responded specifically to plaintiff's breach of warranty allegation. Instead, defendant argues, generally, that Count III of plaintiff's complaint, like Counts I and II discussed above, is "premised on the assumption that the Contract imposed on the Government a duty to procure Oracle software from Seneca during all four option years," and argues that no such duty existed because the Payment Addendum section of Seneca's Price Quote was not incorporated into the Contract.

According to the United States Court of Appeals for the Federal Circuit, in order "to recover for a breach of warranty, a plaintiff must allege and prove (1) that a valid warranty existed, (2) the warranty was breached, and (3) plaintiff's damages were caused by the breach." Hercules Inc. v. United States, 24 F.3d 188, 197 (Fed. Cir. 1994) (citing San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d at 959; and Wunderlich Contracting Co. v. United States, 351 F.2d 956, 968, 173 Ct. Cl. 180 (1965)), aff'd, 516 U.S. 417 (1996); see also Lakeshore Eng'g Servs., Inc. v. United States, 748 F.3d at 1349-50; Agredano v. United States, 595 F.3d 1278, 1280 (Fed. Cir. 2010); FlightSafety Def. Corp. v. United States, 173 Fed. Cl. 699, 711 (2024); Jarurn Invs., LLC v. United States, 144 Fed. Cl. 255, 261 (2019); Vanquish Worldwide, LLC v. United States, 140 Fed. Cl. 460, 475 (2018). "[A] warranty is an assurance by one party to an agreement of the existence of a fact upon which the other party may rely; it is intended precisely to relieve the promisee of any duty to ascertain the facts for himself." Dale Constr. Co. v. United States, 168 Ct. Cl. 692, 699 (1964) (alteration added); see also Hahnenkamm, LLC v. United States, 104 F.4th 1333, 1343 (Fed. Cir. 2024); Oman-Fischbach Int'l (JV) v. Pirie, 276 F.3d 1380, 1383-84 (Fed. Cir. 2002); Ameriserv Tr. v. United States, 125 Fed. Cl. 733, 743 (2016); Nichole Med. Equip. & Supply, Inc. v. United States, 109 Fed. Cl. 328, 333-34 (2013), aff'd, 558 F. App'x 1001 (Fed. Cir. 2014). Thus, the United States Court of Appeals for the Federal Circuit also has stated that a plaintiff "must establish that the [defendant] provided a warranty either explicitly or implicitly" by demonstrating that "the Government assured the plaintiff of the existence of a fact" and "the Government intended that plaintiff be relieved of the duty to ascertain the existence of the fact for itself[.]" See Oman-Fischbach Int'l (JV) v. Pirie, 276 F.3d at 1384 (alterations added); see also Ameriserv Tr. v. United States, 125 Fed. Cl. at 743; Northrop Grumman Computing Sys., Inc. v. United States, 93 Fed. Cl. 144, 152 (2010). Moreover, "formal words, such as 'warrant' or 'guarantee,' are not required to create a warranty." Northrop Grumman Info. Tech., Inc. v. United States, 78 Fed. Cl. 45, 49 (2007) (citing Everett Plywood & Door Corp. v. United States, 190 Ct. Cl. 80, 419 F.2d 425, 431 (1969)), aff'd, 535 F.3d 1339 (Fed. Cir. 2008). "Whether the contract creates a warranty is a question of law that begins with the language of the agreement." Ameriserv Tr. v. United States, 125 Fed. Cl. at 743-44 (citing Coast Fed. Bank, FSB v. United States, 323 F.3d at 1038).

In Northrop Grumman Information Technology, Inc. v. United States, 535 F.3d 1339, also discussed above, the United States Court of Appeals for the Federal Circuit considered whether a contractor could establish that a valid warranty existed by incorporating a "Letter of Essential Need" into a contract by reference. See id. at 1346. In the Northrop case, the United States Air Force contracted with Logicon, Inc. to lease "Omnicast" software—a software program created by Starburst Software—to the Army's Communication-Electronics Command (CECOM). See id. at 1341.[32] Before finalizing the contract, "a Logicon representative drafted a 'Letter of Essential Need' to be signed by CECOM." Id. The Letter of Essential Need stated, in part:

[32] The court notes that Logicon, Inc. changed its name to Northrop Grumman Information Technology, Inc. after it entered the lease for the "Omnicast" software with the CECOM. See Northrop Grumman Info. Tech., Inc. v. United States, 78 Fed. Cl. at 46 n.2.

> This letter is intended to clarify the essential need of the Program Executive Office, Command, Control and Communications (PEO C3S) for the "Starburst Software License Lease Agreement" currently being prepared for implementation . . . . PEO C3S has decided to enter into a lease agreement for the Starburst database products to support [Army Battle Command System] 6.0 and beyond. These products are essential to the operation of ABCS 6.0 as they are integral to the system. After considering the alternatives, it was determined that a lease was the most cost-effective means of providing long-term, Program-wide access to the Starburst products . . . .

Id. at 1341-42 (alteration, capitalization, emphasis, and omissions in original). The Letter of Essential Need in Northrop was signed by a CECOM employee who, according to the decision issued by the United States Court of Appeals for the Federal Circuit, lacked contracting authority. See id. The Air Force then issued a delivery order to Logicon for the Omnicast software, which provided for a base year and two option years, and which incorporated Logicon's proposed leasing terms and conditions by "explicitly referring to the Terms and Conditions and reciting that they 'were incorporated.'" See id. at 1343, 1346. After the Air Force decided not to exercise the second option year available under the delivery order, Logicon brought suit alleging that the Air Force had breached the warranty allegedly created by the Letter of Essential Need. See id. at 1343. The United States Court of Appeals for the Federal Circuit found that "the Terms and Conditions do not refer to the Letter of Essential Need explicitly, as by title or date, or otherwise in any similarly clear, precise manner." Id. at 1346. Therefore, the Northrop court concluded that "the Letter of Essential Need is not incorporated by reference" and Logicon's breach of warranty claim must fail. See id. (emphasis in original).

In Seneca's case currently before the court, Seneca's breach of express warranty claim rests on a legal conclusion already rejected above by this court: that the Payment Addendum section of Seneca's Price Quote was incorporated into the Contract by reference. Seneca argues that the defendant made an express warranty based on the language in the Payment Addendum section of Seneca's Price Quote, which stated:

> The Government elects these terms (the "Addendum") to pay the amounts due under the order (the "system price") on an installment basis as set forth herein (subject to the availability of annual appropriations) to acquire the system specified in the order. Contractor accepts the payment amounts in reliance on the Government's undertakings pursuant to this Addendum including the Government's warrant that the use of the system is essential to its proper operation for the entire term of this Addendum.

(emphasis added). The above quoted language, however, as determined above, was never incorporated into the Contract between Seneca and defendant. The court has already found that the Standard Form 1449 executed by the parties did not contain a single reference to Seneca's Price Quote or to the Payment Addendum section of

Seneca's Price Quote and, moreover, that the Payment Addendum section of Seneca's Price Quote was not subsequently incorporated into the Contract by modification. Although there are some factual differences between the Northrop case discussed above and Seneca's case currently before the court, Seneca, like the contractor in Northrop, argues that an extra-contractual document, the Payment Addendum section of Seneca's Price Quote, created an express warranty in the Contract between Seneca and defendant. As in Northrop, the absence of explicit and clear language in the Contract between Seneca and defendant regarding incorporation of the Payment Addendum section of Seneca's Price Quote indicates that Seneca and defendant did not intend to incorporate the Payment Addendum section of Seneca's Price Quote into the Contract by reference and, therefore, Seneca cannot maintain its breach of warranty claim based on language in the unincorporated Payment Addendum section of Seneca's Price Quote. See Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1347. In Seneca's case, given that plaintiff has failed to allege facts to establish that a valid warranty existed, the court dismisses Count III of plaintiff's complaint for failure to state a claim upon which relief can be granted by this court.

In addition to plaintiff's allegations concerning Counts I, II, and III of Seneca's complaint discussed above, Seneca also alleges in its complaint that the Contract between plaintiff and defendant required the Army "to use its best efforts to obtain funding for the exercise and renewal of each option year." Seneca appears to base this allegation on the "Non-appropriation, Renewal, Termination" term also included in the Payment Addendum section of Seneca's Price Quote, which, as discussed above, stated, in part:

> This Addendum is subject to the availability of annual appropriations. Substantiation to support a termination for non-appropriation shall be provided to the Contractor upon request. The Government has the option to renew the Order for subsequent fiscal years beyond the initial fiscal year. Any renewal(s) shall be on the same terms and conditions of the initial Order. The Government agrees to use its best efforts to obtain funds for each renewal option.

In both Count II (Breach of Covenant of Good Faith and Fair Dealing) and Count III (Breach of Warranty) of plaintiff's complaint, plaintiff alleges:

> The Army's decision not to exercise Option Year 3 and Option Year 4 of the Contract and failure to use its best efforts to secure funding caused Seneca to incur financial harm in the form of: (i) expectancy damages, measured relative to expected profits; (ii) restitution damages, relative to the time the Contract was signed; and (iii) reliance damages, as a sum of damages sustained as a result of a breach, including, without limitation, costs incurred preparing and prosecuting this claim.

(emphasis added). It is unclear, however, based on plaintiff's complaint, whether plaintiff considers defendant's alleged "failure to use its best efforts to secure funding" also to be a breach of contract, as well as a breach of the covenant of good faith and fair dealing,

and a breach of warranty, or whether it is meant by plaintiff to be relevant to each of these allegations.

As discussed more fully above, in order to recover for a breach of contract, plaintiff "must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." Oliva v. United States, 961 F.3d at 1362. "A cause of action based on the implied duty of good faith and fair dealing is simply a specific breach-of-contract claim." Christy, Inc. v. United States, 141 Fed. Cl. 641, 663 (2019) (citing Centex Corp. v. United States, 395 F.3d at 1304). Similarly, "[a]s with any contract-based claim . . . to recover for a breach of warranty, a plaintiff must allege and prove (1) that a valid warranty existed, (2) the warranty was breached, and (3) plaintiff's damages were caused by the breach." Hercules Inc. v. United States, 24 F.3d at 197 (alteration and omission added). Under any of these three contract-based legal theories, plaintiff's allegation that defendant had failed to use its best efforts to secure funding for the remaining option years fails to state a claim upon which relief can be granted, especially given the absence of incorporation of the Payment Addendum section of Seneca's Price Quote into the Contract between Seneca and defendant. To the extent plaintiff is trying to argue that the Army's alleged "failure to use its best efforts to secure funding" was an independent breach of the Contract, or breach of an express warranty, the source of this alleged "best efforts" duty or express warranty was in the Payment Addendum section of Seneca's Price Quote, which the court already has determined above was not incorporated into the Contract by reference and there is no independent "best efforts" obligation on the part of the government elsewhere in the Contract. Therefore, defendant had no articulated, contract duty to use its "best efforts" to secure funding for the option years, which is fatal to a breach of contract claim. See Oliva v. United States, 961 F.3d at 1362 (stating that plaintiff must demonstrate "an obligation or duty arising out of the contract" in order to state a claim for breach of contract). For the same reasons, no express warranty for the government to use its "best efforts" to secure funding for the option years existed, which is fatal to a breach of express warranty claim. See Hercules Inc. v. United States, 24 F.3d at 197 (stating that plaintiff must demonstrate that "a valid warranty existed" in order to state a claim for breach of warranty).

Plaintiff also asserts in its complaint that, in fact, "the Army had funds available to extend the Contract in Option Years 3 and 4." In its reply brief, defendant states that it "do[es] not dispute that the Army had sufficient appropriated funds in May 2020 to cover the full cost of the Contract, including all option years," (alteration added), and that "Congress subsequently appropriated additional funds that could have enabled the Army to exercise Option Years 3 and 4." The parties' agreement that the Army did, in fact, have sufficient funds to exercise Option Year 3 and Option Year 4 undermines plaintiff's allegation that defendant failed to use its best efforts to secure funding for the remaining option years under the Contract and suggests that the Army's decision not to exercise Option Year 3 and Option Year 4 under the Contract was made for independent reasons.

**Count IV: Equitable Estoppel**

In Count IV of plaintiff's complaint, plaintiff argues that defendant should be equitably estopped from denying liability for its actions. Plaintiff alleges that the Army "received a discounted price under the base year of the Contract . . . understanding that the initial savings would be spread out across the Contract's remaining scheduled payments." (omission added). Plaintiff further alleges that the Army "accepted and appreciated this proposed payment structure and terms," "knew that it accepted Seneca's Proposal and Payment Terms," and "knew that its statements regarding the Proposal and the Payment Terms, as incorporated in the Contract, would be acted upon and relied upon by Seneca." Plaintiff further alleges that "Seneca was not aware of the true fact that the Army intended not to exercise all option years under the Contract or that the Army viewed its right to exercise options as absolute, notwithstanding the express Contract language in the Payment Terms to the contrary." Plaintiff, therefore, concludes that "the Army is equitably estopped from asserting that it retained discretion to forego the two remaining option years under the Contract: Option Years 3 and 4."

As indicated above, in its motion to dismiss, defendant argues:

> Seneca's equitable estoppel argument suffers from a fundamental flaw: In the end, it is nothing more than an attempt to bind the Government to an unauthorized act. Seneca bases its equitable estoppel argument on the allegation that a Government agent represented to Seneca that the Contract contains an obligation to exercise option years. But such a representation, as established above, would have been contrary to the ADA and, as such, made without legal authority.

(internal citation omitted). Defendant further argues that "[e]ven if the Court could apply equitable estoppel to award Seneca damages, doing so would not be appropriate here" because the Army did not engage in any "affirmative misconduct." (alteration added). In its reply brief, Seneca attempts to clarify that "[t]he affirmative misconduct that Seneca has pled includes 'Seneca was not aware of the true fact that the Army intended not to exercise all option years under the Contract or that the Army viewed its right to exercise options as absolute, notwithstanding express Contract language in the Payment Terms to the contrary." (alteration added). Seneca also argues that its complaint sufficiently alleges affirmative misconduct by defendant because "it alleges the Army's actions involved intentional wrongdoing, including potentially even an outright lie by the Contracting Officer as to whether the Contract included the Payment Terms."

According to the United States Court of Appeals for the Federal Circuit:

> Equitable estoppel requires "(1) misleading conduct, which may include not only statements and action but silence and inaction, leading another to reasonably infer that rights will not be asserted against it; (2) reliance upon this conduct; and (3) due to this reliance, material prejudice if the delayed assertion of such rights is permitted."

Hahnenkamm, LLC v. United States, 104 F.4th at 1348 (quoting SUFI Network Servs., Inc. v. United States, 755 F.3d 1305, 1325 (Fed. Cir. 2014) (quoting Lincoln Logs Ltd. v. Lincoln Pre-Cut Homes, Inc., 971 F.2d 732, 734 (Fed. Cir. 1992))); see also Solaria Corp. v. United States, 123 Fed. Cl. 105, 124 (2015), aff'd, 671 F. App'x 797 (Fed. Cir. 2016). The United States Supreme Court has indicated that "[e]quitable estoppel 'operates to place the person entitled to its benefit in the same position he would have been in had the representations been true.'" CIGNA Corp. v. Amara, 563 U.S. 421, 441 (2011) (alteration added) (quoting J. Eaton, Handbook of Equity Jurisprudence § 62, p. 176 (1901)). The United States Supreme Court also has held that estoppel may run against the government, but that "the Government may not be estopped on the same terms as any other litigant." Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc., 467 U.S. 51, 60 (1984); see also New Hampshire v. Maine, 532 U.S. 742, 756, reh'g denied, 553 U.S. 968 (2001); Off. of Pers. Mgmt. v. Richmond, 496 U.S. 414, 419 (1990) ("From our earliest cases, we have recognized that equitable estoppel will not lie against the Government as it lies against private litigants."). To be successful when pleading equitable estoppel against the government, "some form of affirmative misconduct must be shown in addition to the traditional requirements of estoppel." Taylor v. McDonough, 71 F.4th at 925 (quoting Zacharin v. United States, 213 F.3d 1366, 1371 (Fed. Cir. 2000)); see also SUFI Network Servs., Inc. v. United States, 755 F.3d at 1325 (A plaintiff "also must show that the government engaged in 'affirmative misconduct'" (quoting Zacharin v. United States, 213 F.3d at 1371)); see also Hanson v. Off. of Pers. Mgmt., 833 F.2d 1568, 1569 (Fed. Cir. 1987) ("It is now settled that to estop the Government there must at least be affirmative misconduct, leading to unfairness, on the part of a Government official." (citing Heckler v. Cmty. Health Servs. of Crawford Cnty., 467 U.S. 51)); Big Easy Studios, LLC v. United States, 181 Fed. Cl. 100, 123 (2026) ("To establish sufficient grounds for equitable estoppel, plaintiff must show the government's affirmative misconduct induced plaintiff's reliance." (quoting SUFI Network Servs., Inc. v. United States, 755 F.3d at 1325)); Vane Minerals (US), LLC v. United States, 116 Fed. Cl. 48, 68 (2014). Moreover, the United States Supreme Court has recognized that equitable estoppel may not be used to impose liability on the government for a government agent's unauthorized representations. See Off. of Pers. Mgmt. v. Richmond, 496 U.S. at 419-20 ("[W]e held that the Government could not be bound by the mistaken representations of an agent unless it were clear that the representations were within the scope of the agent's authority." (alteration added) (citing Lee v. Munroe & Thornton, 7 Cranch 366, 11 U.S. 366, 3 L. Ed. 373 (1813))).

In the case currently before the court, Seneca has failed to allege facts to demonstrate affirmative, misleading conduct by the Army, including Contracting Officer Newberg, which lead Seneca to reasonably infer that the Army would forego its right not to exercise Option Year 3 and Option Year 4. See Hahnenkamm, LLC v. United States, 104 F.4th at 1348 (stating that the party asserting equitable estoppel must demonstrate misleading conduct "leading another to reasonably infer that rights will not be asserted against it"). When deciding not to exercise Option Year 3, resulting in the non-exercise of Option Year 4 as well, the Army acted in accordance with the plain language of the Contract, which, as discussed above, granted the government broad discretion to

determine, at the time each option year came up for exercise, whether or not to exercise the option year. See id. Moreover, the Contract that plaintiff signed included ten, separately priced, FFP CLINs, indicated a base year and four additional one-year options, indicated that only the base year funding was obligated upon signing the Contract, included FAR 52.217-9, and did not incorporate by reference Seneca's Price Quote or the Payment Addendum section of Seneca's Price Quote. Therefore, Seneca was aware, or should have been aware, when Seneca signed the Contract that the option years were not guaranteed to be exercised.

To the extent plaintiff bases its equitable estoppel claim on Contracting Officer Newberg's May 29, 2020 email, which stated that it was the "government's intent" to incorporate Seneca's Price Quote into the Contract, it is significant that Contracting Officer Newberg's same May 29, 2020 email also stated: "I will include a paragraph once our legal department let's [sic] know how they will like it phrased." (alteration in original). Such extra-contractual and tentative statements could not be misleading and plaintiff's alleged reliance on such extra-contractual and tentative statements would have been unreasonable because extra-contractual statements cannot override the plain language in the Contract signed by the parties. See Sundowner 102, LLC v. United States, 108 Fed. Cl. at 741-42 ("By its terms, the contract clearly gave the government the option of extending the contract, or not. There is no ambiguity in this respect, and it is therefor [sic] unnecessary, and indeed, impermissible to consult extrinsic evidence to 'explain' unambiguous terms." (alteration added)). Moreover, the fact that Seneca requested Contracting Officer Newberg to include a sentence in block 20 of the Standard Form 1449 stating that Seneca's Price Quote "is hereby incorporated into this award in its entirety" appears to demonstrate that Seneca understood the kind of "judicially-approved language of incorporation" that often is used to incorporate extrinsic material into a contract by reference. See Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1346. Seneca, however, signed and returned the Standard Form 1449 without any reference to Seneca's Price Quote or the Payment Addendum section of Seneca's Price Quote added to the Contract. In Seneca's case, despite plaintiff's allegations, plaintiff has not provided any evidence in the record before the court demonstrating "misleading conduct" by defendant, nor has plaintiff provided evidence to meet the higher bar of "affirmative misconduct," which is required when asserting equitable estoppel against the government. See Hahnenkamm, LLC v. United States, 104 F.4th at 1348; see also Taylor v. McDonough, 71 F.4th at 925; Solaria Corp. v. United States, 123 Fed. Cl. at 124 (dismissing plaintiff's equitable estoppel claim because plaintiff's "Complaint does not allege sufficient facts to raise the claims of misrepresentation 'above the speculative level'" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. at 555)). Additionally, Seneca has not alleged bad faith in the case currently before the court. The court, therefore, dismisses Count IV of plaintiff's complaint for failure to state a claim upon which relief can be granted by this court.

**Count V: Termination for Convenience**

In Count V of plaintiff's complaint, plaintiff alleges that "[i]n the alternative to Count I, the non-renewal of the Contract in Option Years 3 and 4 should be considered a

termination for convenience by the Army." (alteration added). Citing FAR 52.212-4(l), which was incorporated into the Contract by reference, plaintiff argues that:

> if the Army decides to terminate the Contract for its own convenience, then Seneca is entitled to payment for all work performed to date at the Contract price, including all reasonable costs, which includes the cost incurred by Seneca to acquire the 5-year licenses required to perform its obligations under the Contract.

Plaintiff asserts that "[t]he Army has chosen to terminate the Contract prematurely, and as a result, Seneca is entitled to the balance of the Contract price plus the claim preparation costs due to the Army's termination for convenience." (alteration added).

In its motion to dismiss, defendant argues that Count V of plaintiff's complaint "is founded upon Seneca's erroneous assumption that the Contract required the Government to exercise option years." Defendant argues that its decision not to exercise Option Year 3 and Option Year 4 cannot be a "termination for convenience" because "the Government is not alleged to have stopped Seneca from performing any contractual obligations; it simply allowed the Contract to lapse by declining to extend it beyond Option Year 2, such that Seneca had no further contractual obligations after May 30, 2023." Defendant asserts that "[i]n the absence of continuing obligations under the Contract, there was nothing for the Army to terminate." (alteration added).

As indicated above, the Contract entered into by Seneca and defendant incorporated FAR 52.212-4 by reference, which contained general terms and conditions applicable to contracts for commercial items. <u>See</u> 48 C.F.R. § 52.212-4. Included among the various terms for commercial items in FAR 52.212-4 is the "Termination for the Government's convenience" clause, which states:

> (l) <u>Termination for the Government's convenience</u>. The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose. This paragraph does not give the Government any right to audit the Contractor's records. The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided.

48 C.F.R. § 52.212-4(l) (emphasis in original). Separately, the Contract between Seneca and defendant incorporated FAR 52.217-9 in full, which, as discussed above, states:

> (a) The Government may extend the term of this contract by written notice to the Contractor within 30 days of contract award provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least 30 days before the contract expires. The preliminary notice does not commit the Government to an extension.
>
> (b) If the Government exercises this option, the extended contract shall be considered to include this option clause.
>
> (c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed 60 months.

In Count V of Seneca's complaint, plaintiff appears to conflate the concepts of termination for the government's convenience pursuant to FAR 52.212-4(l) and the government's decision not to exercise two option periods pursuant to FAR 52.217-9, both of which FAR clauses were included in Seneca's Contract. As illustrated by the FAR definitions and case law below, however, termination for the government's convenience and the non-exercise of an option are two very distinct concepts. FAR Section 2.101 defines "termination for convenience" as "the exercise of the Government's right to completely or partially terminate performance of work under a contract when it is in the Government's interest," 48 C.F.R. § 2.101 (2020), whereas FAR Section 2.101 defines an "option" as "a unilateral right in a contract by which, for a specified time, the Government may elect to purchase additional supplies or services called for by the contract, or may elect to extend the term of the contract." Id. In Hi-Shear Technology Corporation v. United States, the United States Court of Appeals for the Federal Circuit held that a contractor could not recover termination for convenience costs, pursuant to FAR 52.249-2,[33] based on unexercised option years because the "contracts were not terminated for convenience; rather, they continued through the base year and the first two option years." See Hi-Shear Tech. Corp. v. United States, 356 F.3d at 1383. Moreover, in Uniq Computer Corp. for Benefit of U.S. Leasing Corp. v. United States, a Judge of the United States Claims Court explained the distinction between a termination for convenience and the government's decision not to exercise an option year as follows:

> [T]here is no rational basis whatsoever for the application of the Termination for Convenience Clause, as it is inapposite to a circumstance where a contract is not renewed for lack of funds. Here we emphasize that the subject lease contract . . . was not "terminated" within the meaning of the

[33] Although FAR 52.249-2 is the standard termination for convenience clause for non-commercial, fixed-price government contracts, see 48 C.F.R. 52.249-2 (2020), and is different from the FAR 52.212-4(l) termination for convenience clause at issue in Seneca's case, the court references the United States Court of Appeals for the Federal Circuit's decision in Hi-Shear Technology Corporation v. United States, 356 F.3d at 1383, for the general proposition that termination for the government's convenience and the non-exercise of option years are separate concepts.

> convenience termination clause, but rather, the contract expired by its own terms when the defendant decided not to exercise its renewal options for FYs [Fiscal Years] 1986 and 1987. Having expired by its own terms, there was no contract subject to "termination" by the Air Force.

Uniq Computer Corp. for Benefit of U.S. Leasing Corp. v. United States, 20 Cl. Ct. 222, 235 (1990) (emphasis in original; alterations and omission added).

In Seneca's case currently before the court, the parties agree that "Seneca successfully completed the base year," and that "Option Year 1 and Option Year 2 were similarly completed to the Army's satisfaction." On April 17, 2023, however, the Army informed Seneca that the requirement for Option Year 3 had been cancelled and that Option Year 3 would not be exercised, resulting in the non-exercise of Option Year 4 as well. As stated in the Contracting Officer's Final Decision issued by Contracting Officer Perez, "[o]n May 30, 2023, the contract lapsed as Option Year 2 was complete and Option Year 3 was not exercised." (alteration added). The government had no obligation to exercise Option Year 3 or Option Year 4 because, as explained above, the Payment Addendum section of Seneca's Price Quote was not incorporated into the Contract to vary the plain language of FAR 52.217-9, which grants the government broad discretion to decide whether to exercise an option year or not. Therefore, as of May 30, 2023, both parties' obligations had been completed and the Contract was allowed to lapse. Seneca cannot recover damages, under a "termination for convenience" theory, for option years that the government had not promised to exercise. See Uniq Computer Corp. for Benefit of U.S. Leasing Corp. v. United States, 20 Cl. Ct. at 235; see also Hi-Shear Tech. Corp. v. United States, 356 F.3d at 1383. The court, therefore, dismisses Count V of plaintiff's complaint for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons explained above, defendant's motion to dismiss plaintiff's complaint for failure to state a claim, pursuant to RCFC 12(b)(6), is **GRANTED**. Plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**